only power of the supervisor of the town is to sign such contract as he may be directed by the commissioners. The town may be compelled to issue bonds to the amount of $75,000, if necessary, to pay for the improvement, in the management or direction of which neither its inhabitants nor officers have any voice. If the statute is general, then it may be that in the great majority of the towns of this state (for we are precluded from looking at the census to contradict this assertion), in the case of all highways 2½ miles in length (and we are equally precluded from saying a majority of the highways are not greater than that in extent), the duties and powers discharged by certain classes of town officers, from the earliest period of our state government, have been taken away from them, and vested in commissioners who derive their appointments from the courts; and the towns may be subjected to the pressure of great debts, in the creation of which neither their officers nor electors have taken any part. In Astor v. Mayor, etc., 62 N. Y. 567, it was held that the authority given the Central Park commissioners to grade certain streets in the city of New York, adjacent to or connecting with the park, was constitutional. As I understand the opinion, there was involved only the right to exercise power as to a particular improvement,—an improvement which at the time the legislature could itself have directed to be made. This power still resides in the legislature, so far as city streets are concerned, but no longer exists as to country highways. But in the opinion there is to be found no support for the proposition that the legislature could transfer from municipal authorities their general powers over the streets, to officials neither elected, nor appointed by the local officers. It seems to me that this statute must fall under the condemnation of one or other of the two sections of the constitution. If it is a local act, it is bad because the legislature cannot pass such acts with regard to highways; if general, it is bad because it deprives the town authorities of the control of their highways.

WILLARD BARTLETT, J. I feel constrained to dissent, on the authority of In re Church, 92 N. Y. 1. Otherwise I should concur in the opinion of Mr. Justice WOODWARD.

(25 App. Div. 98.)

WOLF v. AMERICAN TRACT SOC. et al.

(Supreme Court, Appellate Division, Second Department. January 11, 1898.)

1. NEGLIGENCE OF BUILDER—INJURY TO TRAVELER.

The persons in charge of or doing work on a building in process of construction are bound to do their work in such a manner that nothing shall be cast or fall into the public street, and injure a person lawfully thereon; and the fact that something does fall into the street puts upon them the necessity of explanation.

2. SAME—EVIDENCE—PRESUMPTIONS.

Where, in an action brought against such persons by the injured party, the defendants offer no explanation of how the accident happened, mere proof that it might have been due to the acts of other persons, who were also at work on the building, and for whom defendants were not responsi-

ble. does not, as matter of law, relieve the defendants from the presumption of negligence, or warrant a dismissal of the complaint.

**3. SAME—LIABILITY OF OWNER.**

In such a case, where the entire work of construction is exclusively in the hands of independent contractors, the owner of the building, merely as such, is not responsible for injuries resulting to a third party from their negligence.

Action by Conrad Wolf against the American Tract Society and others to recover for personal injuries. Motion for new trial in pursuance of an order directing plaintiff's exceptions to dismissal of complaint as to each defendant to be heard in the first instance in the appellate division, judgment having been suspended meantime. Dismissal as to the tract society, and new trial granted as to other defendants.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, and HATCH, JJ.

J. Culbert Palmer, for plaintiff.

Hugh Porter, for defendant American Tract Society.

Herbert C. Smyth (Edwin A. Jones, on the brief), for defendants Downey and Webers.

GOODRICH, P. J. The plaintiff, on March 25, 1895, was a truck driver, and had gone with a load of pipe to Spruce street, New York, near the corner of Nassau street, where a large structural steel building, 23 stories in height, was in process of construction. While unloading his truck, which was standing on Spruce street, he was struck on the head by a brick, and seriously injured. For the damage resulting from the injury, he brings this action against the American Tract Society, the owner of the lot, and John Downey, who had a contract with the society, and against the Webers, who had a contract for doing the brick and mason work on the building. At the close of the evidence for all parties, the court dismissed the complaint, directing the exceptions to be heard in the first instance at the appellate division, judgment to be suspended meantime. The plaintiff excepted.

The relations of the defendants arise out of certain written contracts. The society accepted a written proposition of the defendant Downey, the terms of which, so far as they relate to this action, read as follows:

"In accordance with your request that we submit to you a proposition to construct the proposed new building for the American Tract Society, we beg leave to state that we would agree to take entire charge of all the work necessitated by the removal of the old buildings from the premises, make all excavations, take charge of and be responsible for the protection of the adjoining property, and to erect a building, complete, in strict accordance with the architect's plans and specifications; to carefully study said plans and specifications in conjunction with the architect, from the builder's standpoint, and to advise with and work in conjunction for the purpose of obtaining the required result, in effect, as to the practical carrying out of his designs in the most economical manner; to make all contracts for the various departments of work required, subject to your confirmation; to superintend the work in each and every department; * * * to see that the contracts entered into are honestly and faithfully kept. * * * We will be responsible for all loss or damage from

accidents during the construction of the building, should such occur; and we will take all proper precaution for the avoidance of such accidents. We will do the carpentry, cabinet work, and all work in this department at our own works,· and a net cost to us. * * * We would further state that, * * * should we be employed in the capacity of builders, we will take every means in our power to so prepare all work required that the building shall be built within the shortest space of time compatible with good and safe work; and that under no circumstances will work of any inferior character be allowed in the building in any department."

Thereafter, the society, through Downey, made a written contract, signed by its chairman, Mr. Knevals, with the defendants Weber, which provided that they would furnish and provide all the masonry and fireproofing work and materials according to the plans and specifications, and furnish all scaffolding under the supervision of the society, its architect, and Downey, and would be liable for, and indemnify and make good to the society, any and all damages by reason of any breach by them of the contract or any covenant therein, and would indemnify the society and Downey from all liability for damage to life or limb caused in the execution of the contract. All the other work in the building was contracted by similar agreements to a large number of separate contractors, and at the time of the accident over 250 workmen were employed in various parts of the building.

The accident occurred when the ironwork of the building was up to the twentieth story and the masonry up to the sixteenth story. There is evidence tending to show that there was a covered way over the sidewalk on the Spruce street side, and a scaffolding erected by the masons on the seventh and eighth stories. There was a pile of brick on the street outside of the covered way, and the plaintiff backed his truck up as close to this as possible, and was unloading it when struck by a brick. The plaintiff testified that he only knew that he was struck on the head, and knocked into insensibility, but two other witnesses gave evidence as to the fall of the brick. One of them, who was very near the truck, testifies that "the brick came down; hit him (the plaintiff) on the head"; that he looked up, and could not see any one on the scaffolds on the outside of the building; that the brick was taken up by a hod-hoisting machine inside of the building, and nothing outside. Another witness was standing at the rear of the truck, waiting to take off the pipe, when something struck him on the arm, and, looking up, he saw the plaintiff lying, or laid out, on the truck. Another witness, who was helping the plaintiff to unload the truck, said:

"As we were talking, the brick came from the building. * * * My back was to the building, but, as far as I could say, it came down with a slant. I seen it strike him, because there was a shed over the sidewalk, and my back was to the building; but, as near as I could tell, it came on a slant from the building that way. It struck him on the head, and broke in half. And one-half struck the man that was helping him to take off the pipe at the same time. * * * I looked up after the accident, but I couldn't see anything after the brick had fell."

The plaintiff contends that the fall of the brick upon a public street is prima facie evidence of negligence, citing Mullen v. St. John, 57 N. Y. 567, and Hogan v. Railway Co., 149 N. Y. 23, 43 N. E. 403.

In the Mullen Case the wall of an unoccupied building fell outward upon the street, and injured the plaintiff, and the court held that this fact cast upon the owner the burden of showing the cause of it, saying:

"If a person erects a building upon a city street, * * * he is under a legal obligation to take reasonable care that it shall not fall into the street, and injure persons lawfully there. It cannot be affirmed that he is liable for any injury that may occur, whether by inevitable accident or the wrongful act of others. It is not to be disputed, however, that he is liable for the want of reasonable care."

The court approved the case of Kearney v. Railroad Co., L. R. 5 Q. B. 411, where a brick fell from the top of a pilaster of a railroad bridge of the defendant, over which a train had passed shortly before. The queen's bench held by a divided court that it was a case where the maxim, "Res ipsa loquitur," applied, and that it was incumbent on the defendant to show how the accident occurred.

In the Hogan Case a piece of an iron bar fell from the defendant's elevated railroad structure, and the court held that this raised a presumption of negligence on the part of the defendant, which, unless rebutted, warranted the direction of a verdict for the plaintiff. In that case there was evidence that there was a rumble overhead; that men were at work on the road with bars of iron, tools, etc.; and that, after the accident, one of them came down, and picked up the iron bar, and took it back to the structure. The court said:

"It is further assumed that buildings, bridges, and other structures properly constructed do not ordinarily fall upon the wayfarer. So, also, if anything falls from them upon a person lawfully passing along the street or highway the accident is prima facie evidence of negligence, or, in other words, the presumption of negligence arises."

And in Guldseth v. Carlin, 19 App. Div. 588, 46 N. Y. Supp. 357, this court held, where a brick fell inside of an elevator shaft in which work was being done by workmen of the contractor who was erecting the building, and only by them, that the fact of the fall of the brick called upon the contractor for an explanation of the circumstances.

The first question is whether the tract society is liable because it was the owner of the premises. The evidence shows that it had made contracts with other parties for the entire construction of the building. Downey, by the terms of his contract, was not the agent of the society in the construction of the building, but an independent contractor, within the meaning of the authorities; and the society had no control over the details of the work, or over the workmen employed in the building, the erection of which it had surrendered to Downey and the other contractors. Nor do we see that it can make any difference that, by the terms of the society's contract with Downey, he agreed to negotiate the contracts with the other contractors. The society made these contracts directly with the contractors. Even if Downey may be said to have been acting as the agent of the society in negotiating the subcontracts, these contracts were executed by the society itself, and created the relation of independent contractors, for whose negli-

gence the society would not be liable; and there should have been some evidence of negligence on the part of Downey in the character of an agent, in order to maintain an action against the society.

It was held in the case of Murray v. Usher, 117 N. Y. 542, 546, 23 N. E. 564:

"The general rule of respondeat superior charges the master with liability for the servant's negligence in the master's business, causing injury to third persons. They may, in general, treat the acts of the servant as the acts of the master. But the agent or servant is himself liable, as well as the master, where the act producing the injury, although committed in the master's business, is a direct trespass by the servant upon the person or property of another, or where he directs the tortious act. In such cases the fact that he is acting for another does not shield him from responsibility. The distinction is between misfeasance and nonfeasance. For the former, the servant is, in general, liable; for the latter, not. The servant, as between himself and his master, is bound to serve him with fidelity, and to perform the duties committed to him. An omission to perform them may subject third persons to harm, and the master to damages. But the breach of the contract of service is a matter between the master and servant alone, and the nonfeasance of the servant causing injury to third persons is not, in general at least, a ground for a civil action against the servant in their favor."

I think that the doctrine of the authorities is perfectly clear. Whenever a person is injured by the fall of an article from a house into a public street, and on the trial the plaintiff proves that fact, the presumption arises that the owner or person in charge of the premises is negligent. If an owner were occupying his house, and some article fell from a window, he would be presumed negligent. If, however, he had let his house to a tenant, and a similar event had happened, it could not be said that a presumption would arise that the owner was negligent. In that case the presumption would be that the tenant only was negligent.

As to the defendants Downey and the Webers, they cannot be held liable under their covenants with the society, contained in the contracts therewith; as, under our views of the case, the society is not liable, having surrendered the erection of the building to independent contractors. The rule is laid down in French v. Vix, 143 N. Y. 90, 37 N. E. 612, that such a contract is a contract of indemnity to the society alone, and gives no right of action to any one to recover for a claim for which the person indemnified is not liable. The defendants Downey or Webers, or some of them, were in charge of the building, or some part thereof, or were doing work thereon. The doctrine of the authorities holds the persons in charge of or doing work on a building to the responsibility of doing their work in such a manner that nothing shall be cast or fall into the public street, and injure a person lawfully thereon; and the fact that something falls into the street puts upon them the necessity of explanation. It is apparent that, although there is no direct evidence to show from what part of the building the brick fell, yet it came "on a slant" from some part of the building or scaffolding, as no other work was going on in the neighborhood; and inasmuch as, from the force of the blow upon the plaintiff's head, the brick was broken in two parts, that it came from a considerable elevation. There was a question whether the brick fell

through some negligent act of Downey or of the Webers, or of some employés of one or the others; and they were required to show that no act of themselves or their servants caused the accident. This was a question of fact, and not of law. The defendants examined the foreman of the Webers, who testified that immediately after the accident he made inquiries to ascertain how the brick fell, but could discover nothing, and that at the time of the accident none of the Webers' workmen were working on the Spruce street side, and had not been for some five hours before the accident; that there was a large number of workmen, more than 250, at work about the building, most of whom were in the employ of other contractors, not parties to this action. There is no evidence whatever on the part of the defendants as to what caused the fall of the brick, or any circumstances proven as to any care on their part to prevent accidents, or as to care in the erection of the building, or as to means of preventing the falling of materials into the public street. They rely upon the failure of the plaintiff to directly connect them with the accident, or to show any negligence on their part, as distinguished from the negligence of some of the other workmen or contractors at work on the premises. I do not think that the defendants Downey and Webers offered testimony sufficient to enable the court to say, as matter of law, that they had relieved themselves from the presumption of negligence, and it follows that the plaintiff's exceptions must be sustained so far as they relate to the defendants Downey and Webers.

The tract society is entitled to a judgment dismissing the complaint. As to the other defendants, a new trial is granted; costs to abide the event. All concur.