MRS. NELL SMITH *v.* BANK OF COMMERCE & TRUST CO.

(*Jackson.*   April Term, 1916.)

1. **MASTER AND SERVANT.** Injuries to third persons. Independent contractor.

The employer is liable for the negligence of an independent contractor or his employees where he might have anticipated the injury as a direct or probable consequence of the failure to exercise reasonable care in the course of the work. (*Post, pp.* 405, 406.)

Case cited and distinguished: McHarge v. Newcomer, 117 Tenn., 604.

2. **MASTER AND SERVANT.** Injuries to third persons. Independent contractor.

Where plaintiff while walking on street outside of covered sidewalk was struck by a hot rivet which was dropped by an employee of an independent contractor constructing a building, the owner of such building was not liable, the negligent act being only an incidental or collateral detail of the work and not a necessary or natural result which the owner might reasonably have anticipated. (*Post, pp.* 406-412.)

Cases cited and approved:   Hundhausen v. Bond, 36 Wis., 29; Hackett v. W. U. Tel. Co., 80 Wis., 187; McHarge v. Newcomer, 117 Tenn., 595; Strauss v. Louisville (1900), 108 Ky., 155; Pye v. Faxon (1892), 156 Mass., 471.

Cases cited and distinguished:   Anderson v. Fleming, 160 Ind., 597; Boomer v. Wilbur (1900), 176 Mass., 482; Smith v. Milwaukee Builders' & Traders' Exchange, 91 Wis., 360; Richmond v. Sitterding, 101 Va., 354;   Salliotte v. King Bridge Co., 65 L. R. A., 620.

3. **MASTER AND SERVANT.** Injuries to third persons. Independent contractor.

That the owner of a building in process of construction required

an independent bond from the contractor, does not in any way render the owner liable for negligence of the contractor. (*Post, pp.* 412, 413.)

Cases cited and approved: French v. Vix (1894), 143 N. Y., 90; Wolf v. American Tract Soc. (1898), 25 App. Div., 98; Salliotte v. King Bridge Co., 122 Fed., 378.

Case cited and distinguished: Central Coal & I. Co. v. Grider, 65 L. R. A., 506.

FROM SHELBY

Appeal from the Circuit Court of Shelby County to the Court of Civil Appeals, and by *certiorari* to the Court of Civil Appeals from the Supreme Court.—J. P. YOUNG, Judge.

H. H. BONNER and BELL, TERRY & BELL, for plaintiff in error.

R. P. CARY and WM. M. HALL, for defendant in error.

MR. GHOLSON, Special Judge, delivered the opinion of the Court.

This suit was brought by the plaintiff, Mrs. Nell Smith, against the Consolidatd Engineering Company, the E. W. Minter Company, and the Bank of Commerce & Trust Company, hereinafter called the bank, for damages sustained by her on May 9, 1913, while on the street in front of a building that was being

erected for the bank. On March 20, 1913, a contract
was made between the said engineering company and
the bank, as owner, by which the former agreed to
construct an annex for the latter and to repair and
remodel the old building, on the lot of said bank in
the city of Memphis. The defendant engineering
company sublet to the defendant E. W. Minter Com-
pany a portion of the construction work. The new
building was to be fifteen stories high and to be
erected on the north side of and adjoining the large
bank and office building then owned and occupied
by the defendant bank. It was on the most traveled
business street in the city of Memphis. Section 9 of
said contract is as follows:

"The contractor will, at his own expense, protect,
in a suitable manner, the work and ground, so as
to avoid any injury to the property of adjacent
owners or of others and damage to their persons or
employees or any other persons. The contractor will
be responsible for all damage of every nature what-
soever done to persons or property during the prog-
ress of the work, and occasioned by its own acts or
neglect, or that of any of its subcontractors, foremen,
laborers or other employees or agents, and shall have
executed and maintained in force bonds as provided
in the specifications.

"Should there be any unsatisfied claims for dam-
ages to persons or property at the time when final
estimate for doing the work is made and returned,
the owner shall have the right to retain an amount

sufficient to cover any such claims for its own indemnity until the same have been fully disposed of or adjusted by the contractor.''

Another provision of the contract was that the work should be done under the personal supervision of the contractor and the contract should not be assigned, without the consent of the owner; and should any portion of the work be let to subcontractors the contractor covenanted that such subcontractors should be responsible, capable, and reputable persons, and the contractor should remain responsible for the performance of the work, notwithstanding any subcontract.

It was agreed that the defendant E. W. Minter Company did all the steel framework under said contract. Therefore the act which caused the injury to plaintiff was that of the said E. W. Minter Company, or some of its employees.

A shed, ten or fifteen feet wide, covered with heavy solid timber, was erected extending entirely over the sidewalk, all the way in front of the building that was in process of erection. The plaintiff had previously passed under this shed nearly every day. On May 9, 1913, while she was walking on the street in front of the building, and not under the shed, she was struck on the head by a red hot bolt or rivet, severely, and apparently, permanently injured, from which she has suffered great pain.

The declaration, among other things, averred that while said engineering company and said Minter Com-

135 Tenn.—26

pany were engaged in erecting the steel framework of the building, it was their habit and custom to have the bolts or rivets heated to a red or white heat, and thrown by one employee of said defendants to another employee, who was expected to catch them in a bucket or receptacle, and then to be used. That said work, and the manner in which it was done, was unusual, extremely and intrinsically dangerous to pedestrians on the street below; that the defendants failed to take necessary and reasonable precautions to prevent accidents; that the manner of doing the work was exceedingly dangerous; and that it was the duty of the bank as owner to protect the traveling public from injury by reason thereof. The declaration does not contain any specific averment that the bank knew of the alleged dangerous manner in which this work was being conducted, nor wherein or how it had failed to take the necessary precautions, or was derelict, or what could have been done that was not actually done.

Said engineering company and the bank filed a joint plea of the general issue, and the E. W. Minter Company filed two pleas consisting of the general issue and contributory negligence.

On February 20, 1914, the action was dismissed as to the Minter Company. It seems that plaintiff settled with the latter under a contract with covenants not to sue. On February 25, 1914, a verdict was ren-

dered in favor of the Consolidated Engineering Company upon its motion for peremptory instructions. There was no exception taken by the plaintiff to this. There was a mistrial as to the defendant bank. Upon the second trial peremptory instructions were given by the court in favor of the bank, to which the plaintiff excepted, prayed, and was granted an appeal to the court of civil appeals. That court, in a well-considered and able opinion by Mr. Justice Moore, affirmed the action of the circuit judge. The petition for *certiorari* was heretofore granted. It was argued and able and elaborate briefs have been filed for both sides.

It is seriously and earnestly insisted by counsel for the plaintiff that the bank as owner of the property is liable, and that it was error in the court of civil appeals in not reversing and remanding the case. The several assignments of error in substance are, that the erection of this high building upon the most populous, most used, and most important business street in the city of Memphis, immediately abutting and adjoining the sidewalk, was intrinsically dangerous to users of the highway unless due care to prevent injury was used, and that it was the duty of the bank, to the public, as the owner of the property, to have the work done in a cautious, careful, and prudent manner, to minimize as much as possible the inconvenience, annoyance, and danger, and this duty it could not delegate to an independent contractor so as to relieve itself of liability.

It appears that on the day plaintiff was injured, the steel framework of the new building was up to the eleventh or twelfth floor; that two or three men at a little forge would heat the rivets to a red or white heat, and by means of a pair of tongs would throw them to a man with an air hammer, and the latter would catch them in a bucket; they would throw rivets from five to possibly twenty-five feet. The rivets were then being heated on the eighth floor and the man catching them was on the sixth or seventh floor at the northwest corner. The forge was situated back from the front about twenty-five feet, near the middle of the building, which was twenty-five or thirty feet wide. They would use an ordinary tin bucket in catching the rivets, putting a piece of wood in the bottom of the bucket about three inches wide to stop the rivets and to keep the bottom of the bucket from being knocked out. Sometimes a rivet would strike the tin in the bottom of the bucket and bounce out. Sometimes the bucket would be old and the rivets would go through it, and sometimes the man with the bucket would miss the rivets. The witness who detailed this method of handling the rivets stated that on the afternoon plaintiff was hurt he noticed that the man, who was catching the rivets in the bucket, missed one of them and it fell down in the street; that he afterwards looked out of the front window and saw a great crowd gathering in the street; that before he got down there, the lady, who was evidently the plaintiff, was carried to the

elevator and taken to a doctor's office. While this witness did not state that this method of handling the rivets was usual and customary, yet it is fairly inferable from his testimony. It is not shown that at any other time had a rivet gone into the street or had even fallen outside the walls of the building in front and upon the covering over the sidewalk. It is not controverted that the instance detailed above, when the man failed to catch the rivet and it went out into the street, was the occasion when the plaintiff was injured.

It is not disputed that the E. W. Minter Company was an independent contractor at the time the injury to plaintiff occurred. But it is insisted that the rule to be applied comes within one of the exceptions, and therefore the employer is liable.

While the general rule of law is that the proprietor or employer is not liable for the negligence of his contractor and the servants and assistants of the latter, yet there are well-established exceptions and limitations to it.

In the case of *McHarge* v. *Newcomer,* 117 Tenn., at page 604, 100 S. W., 702, 9 L. R. A. (N. S.), 298, these exceptions in general are:

"Where the act contracted to be done is wrongful or tortious in itself; where the injury is the direct or necessary consequence of the work to be done; where the thing to be done or the manner of its execution involves a duty to the public incumbent upon the proprietor or employer; when the work contracted

for is intrinsically dangerous, and the performance of the contract will probably result in injury to third persons or the public; and where the proprietor interferes with the contractor in the performance of the work.''

We think Mr. Justice Moore, of the court of civil appeals, in his opinion in this case, stated the rule to be applied in this case correctly, as follows:

''If an injury might have been anticipated as a direct or probable consequence of the performance of the work contracted for, if reasonable care is omitted in the course of the employment, then in every such case the owner, or the person having the work performed, is liable for an injury sustained during its execution or performance.

''That is, if the owner of a lot contracts with another to erect a building upon it, and if such owner at the time of the execution or the making of such contract might have anticipated, or foreseen, that an injury would result to third persons properly and lawfully upon the streets or sidewalks adjacent to the building, as a direct and probable consequence of the performance of work on the building, if reasonable care was not taken to avoid such injury, then the owner in such case is liable for such injury, and he must see that reasonable and proper care is used to prevent an injury to persons lawfully upon the streets adjacent to the building being erected.''

We find in the case of *Anderson* v. *Fleming,* 160 Ind., 597, 67 N. E., 443, 66 L. R. A., 119, a quotation

approving the text of Dillon on Municipal Corpora-
tions, in discussing the duty of such a corporation
to maintain its streets in a safe condition for public
travel, the following:

"But the employer is not liable where the obstruc-
tion or defect in the street causing the injury is
wholly collateral to the contract work, and entirely the
result of the negligence or wrongful acts of the con-
tractor, subcontractor, or his servants. In such a
case the immediate author of the injury is alone
liable."

In the case of *Boomer* v. *Wilbur* (1900), 176 Mass.,
482, 57 N. E., 1004, 53 L. R. A., 172, the injury was
caused by a brick, which a mason employed to repair
a chimney, let fall in the street and the plaintiff was
injured thereby. The defendant owner employed a
contractor to repair chimneys on his building adjoin-
ing a highway. The contractor was an independent
one, but the plaintiff invoked the same exception to
the general rule of nonliability in such cases as is
relied upon by the plaintiff here. Judge Hammond,
in delivering the opinion in that case, among other
things, said:

"The work which was to be done was not such as
would necessarily endanger persons in the street.
It did not involve throwing the brick into the street,
or causing or allowing them to fall so as to endanger
persons traveling therein. It is plain that unless
there was negligence in the actual handling of the
brick, there could be no injury to the passing traveler.

. . . This is not a case where the work, even if properly done, creates a peril, unless guarded against, as in the cases relied upon by the plaintiff. The accident was caused by the act of the contractor in doing what it was not necessary for him to do, what he was not expected to do, and what he did not intend to do. If it had been necessary for him to topple the chimney over into the street, or to remove the bricks by letting them fall into it, or the contract had contemplated such action, the instructions would not have been objectionable; but as this was not necessary or intended, the work could not be classed as work which, if properly done, was ordinarily attended with danger to the public. The negligence, if any, was in a mere detail of the work. The contract did not contemplate such negligence, and the negligent party is the only one to be held.''

In the case of *Smith* v. *Milwaukee Builders' & Traders' Exchange,* Wisconsin Supreme Court, reported in 91 Wis., 360, 64 N. W., 1041, 30 L. R. A., 504, 51 Am. St. Rep., 912, where the work was being done by an independent contractor, the plaintiff was hit on the head by a falling brick and severely injured. The court said:

''It is evident that the falling of the brick was collateral to the contract, which was, if negligence at all, the result of negligent acts on the part of some of the workmen employed by the contractors, and was not the necessary or natural result of any act which the contractors were employed to do. In this

situation the owner is not liable, at least in the absence of some other distinct ground of liability—citing *Hundhausen* v. *Bond,* 36 Wis., 29; *Hackett* v. *W. U. Telegraph Co.,* 80 Wis., 187, 49 N. W., 822."

In the last case cited, however, the owner was held liable because of the violation of an ordinance which required the owner or contractor, before erecting any building abutting on a public sidewalk, to cause a roof passageway to be built in front of the building upon the sidewalk, under pain of a certain fine or imprisonment.

It clearly appears that in the instant case a roofed passageway had been erected to protect the traveling public just as required by the municipal ordinance referred to in the Wisconsin case supra. This is pertinent to show that such precautions had been taken as were deemed reasonable by the city authorities who passed that ordinance, notwithstanding none is shown to have been required by the city of Memphis.

In the case of *Richmond* v. *Sitterding,* 101 Va., 354, 43 S. E., 562, 65 L. R. A. 445, 99 Am. St. Rep., 879, it was said:

"It cannot be successfully maintained that building a house on a lot abutting upon a street is inherently and necessarily dangerous, or that danger and hazard must necessarily attend its erection. It is a lawful work, and of necessity engaged in by thousands every day, and, if, carefully and properly done involves no danger to any one. The negligence of the employees of the brick contractor in leaving their

plank walkway extended upon the sidewalk after night was not a necessary incident of the work, or even to be anticipated by any one. . . . The erection of buildings adjacent to a highway, with the usual and necessary excavations, and the consequent obstructions to the sidewalk and street, is held not to be within the exception to the general rule, which attaches liability to employers where the work in hand is inherently dangerous, or will necessarily create a nuisance.''

The case under consideration is different from that of *McHarge* v. *Newcomer,* 117 Tenn., 595, 100 S. W., 700, 9 L. R. A. (N. S.), 298, for in that case an awning over a public street in front of the building owned by the defendant, was being repaired and no precautions were taken to prevent portions of the awning, material, or tools from falling on those below. The work being done for the bank in this case was on its own lot. Anything that would have fallen within the walls of the building would necessarily have been upon the property of the defendant bank, where none but those employed in the construction of the building had the right to be, and, as heretofore shown, the public were protected by a shed all the way over the sidewalk, and this shed was covered over with heavy solid timber. It was argued, and we think successfully, that the city authorities would not have permitted the entire street to have been covered. Indeed, it appears not to have been necessary at any other time than on the occasion when plaintiff was injured.

There is an exhaustive note on the subject of the liability of the employer of an independent contractor, under the case of *Salliotte* v. *King Bridge Co.*, 65 L. R. A., 620, at pages 643 and 644, under the head of "Work on Buildings," where a number of cases that are pertinent are collated. Among them we quote:

"The right to maintain an action was also denied, where a person walking along the street was injured by the negligence of a servant of a contractor, who threw a piece of lime into a mortar bed in the street. *Strauss* v. *Louisville* (1900), 108 Ky., 155, 55 S. W., 1075. . . .

"A jury is properly charged that one for whom a brick wall is being erected is not liable for damages sustained by the adjoining owner by the dropping of brick and mortar on his premises, if such occurrences were not necessarily involved in the building of the wall, but were due to the negligence of the contractor or his servants." *Pye* v. *Faxon* (1892), 156 Mass., 471, 31 N. E., 640."

There was a concurrent finding of the trial judge and the court of civil appeals that the defendant bank did not know of the alleged dangerous method of handling the rivets. The plaintiff neither alleged nor proved what precautions could have been taken that would have prevented the injury. It is urged that the rivets should not have been thrown and caught in the manner shown; that they were liable to be missed in catching and fall into the street. Yet plaintiff has failed to prove that a single rivet had ever

previously fallen into the street, or in such a manner as would likely endanger one using the street. How could the owner be held to have anticipated what had never happened before? The negligence complained of was but a mere detail of the work that could not have been foreseen or forestalled by the owner. It did not necessarily follow the execution of the work contracted for. It was not a necessary detail of the work.

We think Judge Moore has been done an injustice in the copying of his opinion where he is purported to have said that this was merely one of the details necessary to be performed in the execution of this contract. We think that he intended to say not necessary, because this statment is not in accord with the remainder of his opinion.

It was insisted by learned counsel for the plaintiff that the bank realized that the work was intrinsically dangerous because it took a bond from the engineering company for the faithful performance of the work and to protect it from the results of injuries to other persons, and for that reason it should be held liable. This does not in any way affect the liability. We quote the following, appearing on page 506 of 65 L. R. A., under the annotated case of *Central Coal & I. Co. v. Grider:*

"It is well settled that the fact of the contractor's having undertaken, as between himself and the employer, to be responsible for injuries occasioned by any tortious conduct, on the part of himself and his

servants, does not in any way affect or qualify the position of third parties in regard to the recovery of damages from the employer. Such a stipulation inures to the benefit of the employer alone, and confers no right of action upon any one else. *French* v. *Vix* (1894), 143 N. Y., 90, 37 N. E., 612; *Wolf* v. *American Tract Soc.* (1898), 25 App. Div., 98, 49 N. Y. Supp., 236.''

See also, *Salliotte* v. *King Bridge Co.*, 122 Fed., 378, 58 C. C. A., 466, 65 L. R. A., 620, an opinion by Judge Lurton.

We are clearly of opinion that the circuit judge and the court of civil appeals were correct and the writ of *certiorari* having heretofore been granted, the action of said courts is in all things affirmed.