[No. 24016. Department Two. November 29, 1932.]

JOSEPH AMANN *et al., Appellants, v.* THE CITY OF TACOMA *et al., Respondents.*[1]

[1]Reported in 16 P. (2d) 601.

*Robert B. Abel, George F. Abel,* and *W. H. Abel,* for appellants.

*W. W. Mount, John E. Gallagher,* and *Bartlett Rummel,* for respondent City of Tacoma.

*Charles T. Peterson* and *S. A. Gagliardi,* for respondents Paine.

*Herbert Cochran,* for respondent English.

*Herbert Cochran* and *Walter Christian,* for respondents Walesby.

STEINERT, J.—These six cases, arising out of a single accident, were consolidated for trial under one number, and from a judgment in all respect adverse to the plaintiffs, the latter have appealed.

The facts necessary to an understanding of the case, and which we find to be amply supported by the evidence, are substantially these: On June 10, 1931, Mrs. A. Grace Amann parked her automobile in the city of Tacoma along the curb on South K street, near the corner of South 12th street, abutting upon which streets was a three-story frame building which was in course of demolition, preparatory to the construction of a brick building upon the same site. The aforesaid location was in a suburban business district of the city.

In the automobile were three adult ladies and four children, all of them being related by ties of blood or marriage. After parking, two of the ladies went upon a shopping errand, and during their absence the front wall of the building, facing South K street, fell out into the street, onto the automobile, killing one of the children and severely injuring the other occupants of the car. The damages prayed for in the several complaints aggregate $211,350.

It appears that, on May 28, 1931, the owners of the premises, James E. Paine and Rose Paine, his wife, who will hereinafter be referred to as Paine, desiring to improve their property with a new building, entered into a contract therefor with P. C. Walesby, doing business as Walesby Construction Co., who, with his wife, Elsie R. Walesby, will be hereinafter referred to as Walesby. The contract, consisting of eleven typewritten pages accompanied by specifications made a part thereof and covering sixteen additional pages, is full and complete in its provisions.

Without going into detail, however, it is sufficient to say that the contract provided that Walesby was to remove all buildings and rubbish from the premises and to erect upon the site a one-story brick building, the contractor to furnish all the necessary labor, material, tools and equipment. The work was to be done according to certain plans and specifications, and under the supervision, and to the satisfaction, of an architect therein named, who was to be the sole judge as to the proper performance of the work. The compensation to Walesby for the work was fixed at a lump sum of $10,965, payable in installments as the work progressed.

Prior to the execution of the contract, Walesby had submitted a "basic" bid of $11,930 for the work, with a provision therein that, if the owner cleared the site,

there was to be a reduction of $350 from the contract price. On the same day that the ''basic'' bid was submitted, the defendant English, by letter addressed to Paine, submitted a bid for demolishing and removing the frame building for a consideration of fifty dollars and the salvage to be realized. English's bid was transmitted by Paine to Walesby, and later accepted, the negotiations for the employment of English, however, being made direct between the two contractors. Aside from the reduction of $350, the further discrepancy between the ''basic'' bid and the ultimate contract is not entirely clear.

Walesby's contract with English, which was oral, covered not only the removal of the frame building, but also a brick wall in the rear thereof, and a concrete floor as well. Walesby was to pay for the necessary bond and industrial insurance for English.

Walesby then applied and paid for and obtained a permit from the city to do the entire work of demolition and construction. The permit contained the following provision:

''Permission is hereby given to do the above described work, according to the conditions hereon, and according to the approved plans and specifications pertaining thereto, subject to compliance with the ordinances of the city of Tacoma.''

At the bottom of the application and permit appears the following:

''All of the stipulations in the above permit are hereby agreed to. P. C. Walesby.''

The city's building code, section 5, paragraph 2, reads as follows:

''In demolishing any building or structure or part thereof, story after story shall be completely removed. No material shall be placed upon a floor of any building in the course of demolition. The bricks, timbers

and other parts of each story shall be lowered to the ground immediately upon displacement. The material to be removed shall be properly wet to lay the dust incident to its removal.''

English, who was an experienced man in his line of work, hired his own crew of men, used his own tools and equipment, and did the work of demolition without consulting either Walesby or Paine in any way. Paine, in fact, was rarely, if at all, in the city of Tacoma while the work of demolition was being done. While there is some dispute as to just how far the work had progressed at the time of the accident, it is clear that the interior of the building had been taken down from the top nearly to the first floor, leaving the front wall standing intact. This, it is to be observed, was in direct violation of the ordinance requiring the building to be taken down story by story.

The workmen attempted to pull the wall over and onto the lot on which the building was situated, by means of a rope. Their pulling on the rope resulted in a sagging or swerving movement of the wall, culminating in its fall into the street, with the results already stated.

At the conclusion of plaintiffs' case, the court granted a nonsuit in favor of the city; the jury returned a verdict in favor of the defendants Paine and English; the jury also returned a verdict in favor of the plaintiffs and against the defendant Walesby, but on the motion of the latter, a judgment notwithstanding the verdict was granted by the court. Motions for new trial having been overruled, a judgment was entered embodying the above results, from which an appeal was taken by the plaintiffs.

Appellants present six assignments of error: (1) error in excluding a certain portion of the building ordinance of the city of Tacoma; (2) error in the ad-

mission of opinion testimony; (3) error in the refusal to give two requested instructions; (4) error in a series of instructions given by the court; (5) error in dismissing the city of Tacoma; (6) error in denying motions for new trial and entering judgment notwithstanding the verdict in favor of the defendant Walesby Construction Co.

Owing to a somewhat involved situation and the contrariety of defenses presented, it seems best to adopt what we consider a logical order of discussion of the assignments, rather than to present the sequence adopted by appellants.

We take up, first, the case against the city, covered primarily by assignment No. 5. Appellants predicate liability of the city upon its duty to keep its streets in a reasonably safe condition for public travel. They aver that the issuance of a permit to demolish the building charged the city with notice that the work was in progress. The city's building ordinance provides that the building inspector was to have twenty-four hours' notice before the demolition was begun. There is no evidence that any such notice was ever given.

It is to be remembered that the permit was issued for work to be done, not in or upon the city's streets, but upon private property, with only a temporary use of a portion of the street for depositing materials to be used in the construction of the building. The city in no way participated in, or supervised, the work of demolition. It merely authorized the work, by issuing a permit therefor.

In *Copeland v. Seattle*, 33 Wash. 415, 74 Pac. 582, 65 Am. St. 333, cited by appellants, suit was brought against the city to recover damages for the death of a pedestrian, occurring in front of a building under construction, and resulting from a plank being thrown

from the roof to the street below. A demurrer to the complaint was sustained and an appeal followed. This court said, on page 418:

"Clearly, a city, by granting a building permit, does not render itself liable for the negligent acts of persons constructing a building under a permit so granted. Nor is this allegation aided by the allegation that no notice or warning of the danger was given. This was not a danger that the city was bound to guard against. Had it granted to the respondent church the right to use the street, and then knowingly suffered it to so use it as to endanger the lives of persons traveling upon the street, a different question would be presented; but it was not bound to anticipate that the persons erecting the building would be so grossly negligent as to throw a board from the roof of the building into the street. If it can be held liable for such an act, there is no wrong which one of its citizens may inflict upon another for which it is not liable."

A distinction is thus clearly indicated between a situation where the work involves the construction or repair of a street, or the sufferance of a dangerous or negligent use thereof, and one where the work is being done upon private property. As in the *Copeland* case, the city here was not bound to anticipate that the persons carrying on the work of demolition would be so grossly negligent as to cause the wall to fall into the street. In this connection, it may be added that this case does not involve a nuisance which the city knowingly permitted to be maintained so near the street as to make it dangerous to travelers thereon.

Appellants cite the following cases in support of their contention: *Sutton v. Snohomish,* 11 Wash. 24, 39 Pac. 273, 48 Am. St. 847; *Sproul v. Seattle,* 17 Wash. 256, 49 Pac. 489; *Beall v. Seattle,* 28 Wash. 593, 69 Pac. 12, 92 Am. St. 892, 61 L. R. A. 583; *Noll v. Seattle,* 29 Wash. 28, 69 Pac. 382; *Colquhon v. Hoquiam,* 120 Wash. 391, 207 Pac. 664; *Rowe v.*

*Richards,* 32 S. Dak. 66, 142 N. W. 664, L. R. A. 1915E, 1069; *Langam v. City of Atchison,* 35 Kan. 318, 11 Pac. 38, 57 Am. Rep. 165; *Kiley v. City of Kansas,* 69 Mo. 102, 33 Am. Rep. 491; *City of Seattle v. Lloyds' Plate Glass Ins. Co.,* 253 Fed. 321.

Time does not permit, nor does space justify, a detailed analysis of each of these cases. A reading of them will disclose that they involved some one or more of the following features: (1) that they were excavations in the city's streets; (2) that a public nuisance had been permitted, or was allowed to exist; (3) that the city had actual or constructive notice of the dangerous situation. None of these conditions appear in the present case, as shown by the evidence, and hence those cases are not controlling here.

The correct rule applicable here, we think, is that, where the city issues a permit for the construction, alteration or removal of a building abutting upon a street, and the act for which the municipality gives a permit is, in itself, entirely proper and safe, and from which no injury could result except in the negligence of the person doing it, the municipality is not liable, unless it is negligent in taking proper precautions to prevent injury, after notice that the licensee has rendered the street unsafe for use. The cases illustrating various phases of this question are collated under *Miller v. Clarke,* 47 R. I. 13, 129 Atl. 606, 42 A. L. R. 1204, which cites the *Copeland* case, *supra.*

We think that the action of the court with respect to the city was right, and its judgment in that respect is affirmed.

We take up next the case against the respondent English, who was the subcontractor. Although the jury returned a general verdict in his favor, it also returned a special finding, No. 2, to the effect that paragraph 2, § 5, of the building ordinance,

requiring the demolishing of buildings story by story, had been violated. This was an act in violation of the city's ordinance, and consequently was, of itself, negligence, for which English was responsible. Being wholly inconsistent with the general verdict, it must control upon the question of fact with respect to negligence. *Bullis v. Ball*, 98 Wash. 342, 167 Pac. 942; *Great Western Land & Imp. Co. v. Sandygren*, 141 Wash. 451, 252 Pac. 123.

Having found, upon one of the vital issues of the case, that there was specific negligence, the jury may not, by a general verdict, absolve one whose immediate act constitutes the act of negligence specifically found. The verdict was, therefore, contrary to the evidence, and for that reason alone a new trial must be had as to the respondent English.

Appellants further assign as error No. 3 the refusal to give their requested instruction No. 7. A portion of that instruction it would have been proper to give, in so far as it instructed the jury that, if they found that English demolished the building in violation of paragraph 2, § 5, of the building ordinance, without making provision for the safety of the public, and that his act in so doing was the proximate cause of the injury, then they should find for the plaintiffs.

But the appellants went further in their requested instruction, and included elements which we think were improper, concluding with the provision that, upon such finding, the jury should return a verdict against all of the defendants. The instruction would thus have been misleading and confusing, and, if followed, would have resulted in a verdict contrary to the law, as we construe it, as affecting the case of two of the respondents. It is not error to refuse to instruct the jury as requested when the instruction is partly erroneous, and there is no obligation upon the court to

segregate the correct from the incorrect portion of a requested instruction and then submit the correct portion thereof. *Fehler v. Montesano,* 110 Wash. 143, 188 Pac. 5.

Appellants assign as error No. 1 the court's excluding from the evidence paragraph 3, § 5, of the building code, which provides for the erection of a shed over the sidewalk while demolishing a building, in the event that the building is more than forty feet high. The evidence was properly excluded, for the reason that that section was obviously enacted for the benefit and protection of users of the sidewalk and not for vehicular traffic. In any event, the jury found specially, in answer to interrogatory No. 1, that the building was not more than forty feet high, and therefore the correctness or incorrectness of the court's ruling becomes immaterial.

Appellants assign as error No. 2 the admission of certain opinion testimony. Several policemen were permitted to testify as to the appearance of danger presented by the demolition of the wall. This was competent evidence upon the question of notice to the city.

Other witnesses were allowed to express their opinion as to whether the work was done in the usual and ordinary way, whether certain braces were solid, firm and sufficient under ordinary circumstances to sustain the wall, whether the method used in fastening certain braces was the approved method, and whether the removal of a bay window had the effect of weakening the wall. The witnesses so testifying all had experience in building operations. Matters such as they testified to were peculiarly within their knowledge, derived from experience in a particular business. Their testimony was, therefore, competent. *Mahan v. Springer,* 155 Wash. 98, 283 Pac. 667.

Other witnesses, however, testified that they had worked upon the premises under the same sense of security as in working upon other buildings, and that certain barriers were of sufficient size and strength to warn off, or attract the attention of, pedestrians. This evidence was improper, and should have been excluded as being matters not calling for expert opinion. While the error may not have been sufficient of itself to warrant a reversal, we advert to it in order to prevent its recurrence if a new trial be had.

By assignment No. 4, appellants complain of instruction No. 6, touching the subject of contributory negligence. Appellants contend that, as to appellant Leona Amann, who was not the driver of the car, there was no evidence of contributory negligence. The same might also be said with reference to all the occupants of the car save the driver.

We think the exception taken to the instruction is well-founded. The car was parked in a legal manner at a place where appellants had a right to be, and there were no signs or guard rails to warn appellants or prevent their parking. Respondent's defense was bottomed upon facts which he claimed exculpated him from the charge of negligence. It is manifestly inconsistent to charge a plaintiff with contributory negligence under a state of facts which assume that the defendant himself is not guilty of negligence. As to respondents English and Walesby, the giving of this instruction was error. In view of our conclusions in the case as to the other respondents, we hold that the giving of the instruction was immaterial, so far as they were concerned.

The judgment as to the respondent English is reversed upon the ground that it is against the evidence accepted by the jury as reflected in its answer to

special interrogatory No. 2, and upon the ground of error in giving instruction No. 6.

■ We next take up the case against the respondent Walesby. The court granted judgment n. o. v. as to him on the theory, as expressed by the court in its ruling, that,

". . . having thus found that English, to whom the job was given, performed that job in a proper manner, and was not guilty of negligence, it is difficult to see how Mr. Walesby, who gave him the job, can be guilty of negligence."

It seems clear and logical to us that, since, under our ruling, the negligence of English was established by the special finding of the jury, contrary to the effect of the general verdict, the basis of the court's ruling on the motion for judgment n. o. v. in favor of Walesby has been removed; that, if Walesby stands with English on an exoneration of negligence, he must likewise fall with him on its establishment, unless there be some other principle of law that exonerates him from liability.

The principle which might excuse him, and which naturally suggests itself, is that, as between Walesby and English, there existed the relationship of independent contractor, under which it could be argued that Walesby would not be liable for the negligence of English. The same rule, of course, applies as between contractor and subcontractor as does between master, or owner, and the principal contractor. But the doctrine of independent contractor has its limitations and exceptions. As was said in the case of *Ackles v. Pacific Bridge Co.*, 66 Ore. 110, 133 Pac. 781:

"Where a statute or city ordinance requires certain precautions to be taken for the safety of the public in the manner of doing the work, the contractor cannot shift his liability for failure to take these precautions by employing a subcontractor."

The permit was applied for, and was issued to, Walesby. The permit was granted, conditioned upon compliance with the ordinances of the city. The city's building code required that the building be demolished story by story. This was a safety provision designed, in part at least, for the safety of persons using the street upon which the building abutted. Walesby agreed in writing to all the stipulations contained in the permit, and therefore agreed to do the work in compliance with the building code. He was under a duty to perform the conditions of the permit, or else see that they were performed. He incurred a duty that was non-delegable.

Where a statute or municipal ordinance requires one to do certain things, or to take certain precautions for the protection of the public, he cannot delegate such duty to another, even though such other person may sustain the relationship of independent contractor as to him. The judgment as to Walesby must, therefore, be reversed.

We finally come to the case against the owner, the respondent Paine.

Assignments of error Nos. 1 and 2 and a part of No. 3 have already been discussed. Assignment of error No. 3 is also directed to the court's refusal to give requested instruction No. 6, which purported to tell the jury that the making of a contract between Paine, the owner, and Walesby and English, the contractor and subcontractor, respectively, to demolish the building, did not relieve the owner from his obligation to see that the building was demolished *in such a manner* as to cause the street in front of the building to be, and remain, in a reasonably safe condition for travel and use by the public, and that such duty and responsibility still rested upon the owner. We do not

think that the requested instruction announced a correct rule of law, so far as the owner is concerned.

Counsel cite the case of *Frostman v. Stirrat & Goetz Investment Co.*, 65 Wash. 608, 118 Pac. 742, in support of their contention. In that case, the defendant, who was the owner of the building that was being removed, applied for and secured the permit for its removal, agreeing to comply with the city's ordinances in respect to such matters. In that case, the court said, on pages 613 and 614:

"In this case, also, the owner of the building actually took out the permit and agreed to erect the barrier, which was never done, either by it or the independent contractor. The injury here was one which resulted directly from the failure to erect the staging, and this failure was negligence of the owner as well as of the subcontractor, because it was a statutory duty which the owner had agreed to perform, and which he could not delegate to another and thereby escape liability."

In the present case, the owner did not apply for, nor obtain, nor agree to be bound by the conditions of, the permit. Under the evidence, as we read it, the contract for demolition was wholly between English and Walesby, although, as a result thereof, the owner realized some saving in the major contract between himself and Walesby. We think the owner would have been entitled to have that issue withdrawn from the consideration of the jury, as the evidence stood at the close of the case.

But assuming that there was sufficient evidence to take that issue to the jury, it was disposed of in favor of the owner by the jury's verdict, and the verdict was not vitiated by any special finding of the jury, as in the case of English. There was no error in refusing to give the requested instruction; but if it could be said that there was, it was cured by the verdict.

The appellants next complain, by assignment of error No. 4, of a series of instructions given by the court. With the exception of instruction No. 16 they raise, generally, the question of non-delegability of an owner's duty to provide for the safety of the public. In instruction No. 16, the court told the jury that paragraph 2, § 5, of the building code, above mentioned, had to do *only with the method of carrying on the work* of demolition, and that the jury could not find Paine and wife guilty of negligence merely because the building had been taken down more than one story at a time. Appellants' contention is that the ordinance does not have to do only with the method of carrying on the work, but that its purpose was to safeguard the interest of those using, or in the vicinity of, the street.

The objection is well taken, so far as the respondents Walesby and English are concerned, but not so far as the city or the owner is concerned. The contractors were operating under, and were bound by, the terms of the permit and the ordinance; but so far as the other two respondents are concerned, they were not, under the evidence of the case, charged with any duty thereunder. The ordinance applied to those who were permitted to do, or actually did, the work. Neither the city nor the owner was required, under the circumstances, to see that the particular work was done under the provisions of the permit.

Whether the owners are liable, as for a non-delegable duty, depends upon the correct determination of two questions. The first is this: Did the contract for the performance of the work constitute Walesby and English independent contractors? We are satisfied that it did. As already indicated, the owners did not participate in the work, nor did they reserve or exercise any right of control over it. They were interested only in the results, not in the manner

of accomplishing the work. The contract, by its terms, established an independent employment, and the evidence shows that the work was so conducted. In *Larson v. American Bridge Co.*, 40 Wash. 224, 82 Pac. 294, 111 Am. St. 904, we said:

"The general test which determines the relation of independent contractor is that he shall exercise an independent employment, and represent his employer only as to the results of his work and not as to the means whereby it is to be accomplished. The chief consideration is that the employer has no right of control as to the mode of doing the work; but a reservation by the employer of the right to supervise the work, for the purpose of merely determining whether it is being done in accordance with the contract, does not affect the independence of the relation."

See, also, *Engler v. Seattle,* 40 Wash. 72, 82 Pac. 136; *Seattle Lighting Co. v. Hawley,* 54 Wash. 137, 103 Pac. 6; *Glover v. Richardson & Elmer Co.,* 64 Wash. 403, 116 Pac. 861.

The second question is this: Is the owner liable for the acts of negligence of an independent contractor? The general rule is that he is not. The exception is best set forth by a quotation from our own decisions.

"Generally speaking, where the act which causes the injury is one which the contractor is employed to perform, and the injury results from the act of performance and not from the manner of performance, or where the contractor is employed to do an act unlawful in itself, or where the injury is due to defective plans or methods pursuant to which the work is done, or where the work is inherently or intrinsically dangerous in itself and will necessarily or probably result in injury to third persons, unless measures are adopted by which such consequences may be prevented, and in other like cases, a party will not be permitted to evade responsibility by placing an independent contractor in charge of the work." *Kendall v. Johnson,* 51 Wash.

477, 99 Pac. 310; *Cary v. Sparkman & McLean Co.*, 62 Wash. 363, 113 Pac. 1093.

See, also, *Johnson v. Seattle Taxicab & Transfer Co.*, 85 Wash. 551, 148 Pac. 900; *Davis v. Whiting & Son Co.*, 201 Mass. 91, 87 N. E. 199, 18 A. L. R. 782; *Smith v. Bank of Commerce*, 135 Tenn. 398, 186 S. W. 465, 18 A. L. R. 788; *Press v. Penny*, 242 Mo. 98, 145 S. W. 458, 18 A. L. R. 794; *Engel v. Eureka Club*, 137 N. Y. 100, 32 N. E. 1052, 33 Am. St. 692.

The injuries resulted not from the act of doing the work, but from the manner in which it was performed by the subcontractor; the work to be done under the permit and contract was not unlawful; the plans and method under which the work *was* to be done were not defective; the work was not inherently or intrinsically dangerous; the building to be removed was not, of itself, a nuisance. It must be kept in mind that the work involved the tearing down of a complete building which had been used up to the time of the demolition; it did not involve the tearing down of a sheer wall left standing alone, by the owner, which would otherwise have been a nuisance to the users of the street. Therein lies a vital distinction. By the decided weight of authority, building activities, including both construction and demolition, are not, of themselves, inherently or intrinsically dangerous, nor do they suggest anything in the way of a nuisance, unless they have become such through decay or some similar condition. *Sartirana v. New York County National Bank*, 139 App. Div. 597; 124 N. Y. Supp. 197; *Hexamer v. Webb*, 101 N. Y. 377, 4 N. E. 755, 54 Am. St. 703; *Looney v. Prest-O-Lite Co.*, 65 Ind. App. 617, 117 N. E. 678; *Parsan v. Johnson*, 208 N. Y. 337, 101 N. E. 879; *Richmond v. Sitterding*, 101 Va. 354, 43 S. E. 562, 65 L. R. A. 445, 99 Am. St. 879; 14 R. C. L. 88.

Under the facts and the law of this case, the owner

314

did not assume any non-delegable duty with reference to the performance of the work or the exercise of safety precautions. The court was right in overruling appellants' motion for a new trial as to Paine, and its judgment in that respect is affirmed.

Our conclusion upon the case as a whole is as indicated by our several conclusions respecting the case of each respondent. The judgment is affirmed as to the respondents city of Tacoma and Paine, and reversed as to the respondents Walesby and English.

TOLMAN, C. J., BEALS, HERMAN, and MAIN, JJ., concur.

