# STATE ex rel. GEORGE et al. v. FLEMING et al.—264 S. W. (2d) 589.

Middle Section.   August 28, 1953.

Petition for Certiorari denied by Supreme Court, February 11, 1954.

Thomas G. Watkins and Cecil Branstetter, both of Nashville, for plaintiffs in error.

C. D. Hopkins and R. K. Woody, both of Columbia, and John K. Maddin, of Nashville, for defendants in error.

FELTS, J.   This is an action for damages to a building, brought by the State on relation of the owner, Dr. C. D. George, for use of his subrogee, Fire Association of Philadelphia, against Flo Fleming, individually and as Sheriff of Maury County, Sun Indemnity Company of New York, surety on his official bond, and Robert Haywood, a contractor employed by him in erecting a radio tower for use of his office.

It was alleged that Fleming, acting as Sheriff, was having the radio tower erected near the jail; that the tower was to be about 150 feet high and constructed of iron pipes set in concrete bases in the ground, and braced with ''guy'' wires; that this work was being done by a contractor, Robert Haywood; and that when it was nearly finished, on June 27, 1947, there came a windstorm, the wind blowing not over 35 miles per hour, which blew the tower down and caused it to fall upon and wreck the building of Dr. George.

It was further alleged that the Fire Association of Philadelphia had issued to Dr. George a policy insuring the property against damage by windstorm; that the damage caused by the blowing of the tower on the building amounted to $2,113; and that the insurer had paid

this sum to Dr. George and had become subrogated to his right to recover such damage from defendants.

The declaration was in two counts and, as we understand, was based not upon negligence but upon so called "strict liability"—that the work itself was an activity so inherently dangerous that defendants, though not negligent and though without fault, were nevertheless liable for whatever damage that resulted.

The theory of the first count was stated thus: "That the construction and erection of said radio tower is an inherently dangerous operation to people and property in close proximity since such must be fabricated section by section building it to withstand a wind thrust or velocity of at least ninety (90) miles per hour."

The second count, based on erection of the scaffolding, stated its theory: "That when said radio tower so built of iron pipe had been completed or about completed but prior to said windstorm skeleton scaffolding was erected at or near it to enable the same to be painted. The erection of such tower, scaffolding and the painting of said tower was inherently dangerous operations."

Defendants Fleming and Haywood filed a plea of the general issue of not guilty. The defendant surety filed a plea denying that Fleming was acting in an official capacity, denying that it was liable, and generally denying all averments of the declaration.

Plaintiff moved the court for an order to require defendants to plead specially their defenses, under Code Section 8767. The court entered an order reciting that the motion was sustained upon the statement of attorneys for defendants that their principal defense was that the loss, if any, was caused by an act of God—to wit: a windstorm. The order further recited that the court was of opinion that defendants should not be precluded from

making any other defense that might arise on the hearing, and that the motion was sustained only to this extent.

Upon the trial, at the close of plaintiff's evidence, defendants moved for a directed verdict. Their motion was overruled, they stood upon it, offered no evidence, and the case was submitted to the jury upon plaintiff's evidence and the charge of the court. The jury returned a verdict for defendants, and judgment was entered thereon dismissing the action.

Plaintiff appealed in error, and its first assignment is that the Trial Court erred in overruling its motion to require defendants to plead their defenses specially.

■ Assuming that Code Section 8767 is mandatory, and not discretionary, and that the Trial Court should have unqualifiedly granted plaintiff's motion, still the court's action, in our opinion, was not harmful error in the circumstances here appearing.

■ The purpose of this section is to simplify the issues, limit the evidence thereto, and save time and expense. If the court had granted plaintiff's motion, this would have limited defendants' evidence to the defenses they had specially pleaded. Creekmore v. Woodard, 192 Tenn. 280, 241 S. W. (2d) 397.

As they offered no evidence, the matter complained of became immaterial. At least it does not appear to have affected the result of the trial, and cannot therefore be held reversible error. Code, Sec. 10654; Thomason v. Trentham, 178 Tenn. 37, 154 S. W. (2d) 792, 138 A. L. R. 461.

Plaintiff insists that there is no evidence to support the verdict of the jury, and that the Trial Court erred in not granting plaintiff a new trial on this ground.

Plaintiff called Mr. Klugman as one of its witnesses. He testified that he had sold the radio equipment to the

Sheriff, and he described in some detail how the tower and the scaffolding were being erected, how the tower was anchored to the concrete bases and braced with the steel "guy" wires. He said that he had had some ten years' experience in supervising the erection of similar towers, and he expressed the opinion that this one was being properly constructed and said that all precautions that could have been taken were taken in the construction.

Plaintiff called another witness who was an engineer. He had not seen the tower either before or after it was blown down, and he knew nothing as to how it was being constructed. He said that engineers would design such a tower as this to withstand a horizontal force of thirty pounds per square foot, which he roughly estimated as equal to a wind velocity of 95 miles per hour, though he said the wind did not behave according to mathematical theories.

It appeared that this tower and scaffolding had been completed to a height of about 110 feet, when it was blown down by a windstorm on June 27, 1947. Evidence was that on that day the wind reached a velocity of 41 miles per hour at Berry Field, but that was no indication of the wind velocity at Columbia. No witness testified as to that. It was shown, however, that the cause of the loss sued for was "damage by tornado" (Ex. 3 to George).

As we have seen, the theory of the declaration was that the erection of the tower and the scaffolding was an inherently dangerous operation, within the rule of strict liability which is applied in such things as dynamite, electricity, gas, and blasting. Prosser on Torts (1940), 446 et seq; International Harvester Co. v. Sartain, 32 Tenn. App. 425, 449-456, 222 S. W. (2d) 854, (electricity); McHarge v. M. M. Newcomer & Co., 117 Tenn. 595, 100 S. W. 700, 9 L. R. A., N. S., 298, (nuisance—awning roller

falling on pedestrian on sidewalk); Carroll Blake Construction Co. v. Boyle, 140 Tenn. 166, 203 S. W. 945, (undermining support of party wall).

There was, however, no proof that erection of this tower and scaffolding was necessarily dangerous, or ultrahazardous, or involved any more risk than the erection of any other common structures, such as buildings, etc.

It is true strict liability was applied in the McHarge case where an independent contractor was repairing an awning without taking precautions to protect pedestrians on the sidewalk below. But where such precautions had been taken it was held in Smith v. Bank of Commerce & Trust Co., 135 Tenn. 398, 186 S. W. 465, 18 A. L. R. 788, that erection of a fifteen story steel building was not a dangerous operation within the rule of strict liability.

A case more nearly like the case before us is Cash v. Casey-Hedges Co., 139 Tenn. 179, 201 S. W. 347, where it was sought to apply the rule of strict liability to the erection of a heavy smokestack 4 feet in diameter and 60 feet high. It was held, however, that the rule was not applicable. The court said:

"We cannot say that the erection of smokestacks, similar to the one in this case, is necessarily dangerous when done with care by persons who have skill in such matters, and the record does not show that the municipality knew Casey-Hedges Company was incompetent or that it controlled the methods or appliances adopted by the latter in performing the work. * * *" 139 Tenn. 184-185, 201 S. W. 349.

Since there was no charge of negligence or want of care in the method of erection of the tower or the scaffolding, and since the proof failed to make out a case of strict liability as charged in the declaration, we think

the jury were well warranted in returning a verdict for defendants.

All of the assignments of error are overruled and the judgment of the Circuit Court is affirmed. The costs of the appeal in error are adjudged against C. D. George, the Fire Association of Philadelphia, and the surety upon their appeal bond.

Howell and Hickerson, JJ., concur.