### EMERSON et al. v. PARK et ux.
### No. 10079.

Court of Civil Appeals of Texas. Galveston.
May 30, 1935.

Rehearing Denied July 18, 1935.

See, also, 73 S.W.(2d) 641.

Boyles, Scott, Fahey & Atkinson, of Houston, Rucks & Enlow, of Angleton, and Frank G. Dyer, of Houston, for appellants.

Peak & Rowland, of Houston (Jack W. Rowland, of Houston, of counsel), for appellees.

LANE, Justice.

This suit was brought by J. H. Park and wife, Annie C. Park, against B. C. and G. C. Emerson, doing business under the firm name of B. C. & G. C. Emerson Truck Line.

For cause of action, plaintiffs alleged that on or about November 21, 1932, defendants were engaged in operating a truck line known as the B. C. & G. C. Emerson Truck Line, and had under their control a certain Chevrolet truck, which they were authorized by the Railroad Commission to operate under and by virtue of the laws of the state of Texas.

That defendants on said date had in their service and employment, for the purpose of operating and driving such truck, as their agent, representative, and servant, one L. L. Emerson and one R. E. Jernigan; and that said agents, servants, and employees were at all times duly authorized and empowered to drive said truck on the highways between Houston and Angleton, Tex., on behalf and under the direction of the defendants.

That on November 21, 1932, one Jesse Louis Park, plaintiffs' son, was operating his motorcycle upon the highway between Angleton and Houston, Tex., in Brazoria county, when by reason of the negligent operation by defendants, their agents, employees, and representatives, of the Chevrolet truck, said truck was caused to collide with the motorcycle being operated by their said son, Jesse Louis Park, causing certain injuries to him by reason of which he died on November 22, 1932.

Plaintiffs also alleged that Jesse Louis Park was 28 years of age, and had contributed $75 to $100 per month to plaintiffs during his life, and by reason of his death plaintiffs were damaged in the sum of $15,000.

Plaintiffs also alleged that on account of the injuries received by Jesse Louis Park and by his death plaintiffs incurred hospital and funeral expenses aggregating $450, for which plaintiffs also sued.

Defendants answered by general demurrer, general denial, and a general plea of contributory negligence on the part of the plaintiffs' son, Jesse Louis Park.

The cause was tried before a jury upon 37 special issues. In answer to special issues 1, 2, and 3, the jury found that the collision occurred as alleged by plaintiffs, and that Jesse L. Park, deceased, received injuries as a proximate result of such collision from which he died. Issue No. 4 is as follows:

"Do you find from a preponderance of the evidence that L. L. Emerson was, at the time and place in question, operating this truck under the direction and control of B. C. Emerson and G. C. Emerson, doing business as B. C. and G. C. Emerson Truck Line?"

The answer of the jury to such issue was, "Yes."

In answer to issues Nos. 5, 6, 7, 9, 10, 11, 12, 13, and 14, the jury found that the truck being driven by L. L. Emerson at the time, place, and occasion in question was being driven on the left-hand side of the highway going in the direction he was traveling; that the driver of the truck at the time, place, and occasion in question did not keep such a lookout for the motorcycle being operated by Jesse Park as an ordinarily prudent person would have done under the same or similar circumstances, and that the truck being operated by L. L. Emerson at the time, place, and upon the occasion in question was being driven at an excessive and dangerous rate of speed. The jury also found that the foregoing facts constituted negligence and each was a proximate cause of the collision in question and the resulting death of Jesse Park.

In answer to the 15th issue, the jury found that $6,675, if paid in cash, would fairly and adequately compensate plaintiffs for any pecuniary loss or damage sustained by the death of their son, Jesse Park.

Issues 16 to 37, inclusive, were issues as to whether or not Jesse Park, deceased, was guilty of any act constituting contributory negligence, and all such issues were answered favorably to plaintiffs.

Upon the answers of the jury to the special issues and the evidence, the court rendered judgment for the plaintiffs, J. H. Park and wife, Annie Park, against the defendants, B. C. & G. C. Emerson, jointly and severally for the sum of $6,675, with interest thereon at the rate of 6 per cent. per annum from date of judgment until paid.

Defendants have appealed from such judgment.

Reduced to their ultimate, appellants' propositions 1 to 7, inclusive, are a contention that the ultimate and controlling fact issue which appellees were required to establish before they could recover in the case was, that L. L. Emerson was the servant, agent, or employee of appellants, and acting within the scope of his employment at the time of the collision in question, and therefore the court committed reversible error in submitting special issue No. 4 to the jury, reading as follows:

"Do you find from a preponderance of the evidence that L. L. Emerson was, at the time and place in question, operating this truck under the direction and control of B. C. & G. C. Emerson Truck Line? You will answer 'He was,' or 'He was not,' as you find the facts to be."

And further, that the affirmative answer of the jury to such issue was not sufficient to predicate liability on appellants, as L. L. Emerson might have been operating the truck under the direction and control of appellants at the time, place, and occasion in question and still not be an agent, or employee of appellants, and that such issue did not submit any ultimate fact, but only an evidentiary fact.

We overrule appellants' contention. Application was made to the Railroad Commission of Texas for a permit to operate as a special commodity carrier. One of the directions in the application was as follows:

"4. If an individual, firm or association, give names and address of all parties owning an interest in the motor carrier line or organization."

The reply to such directions, as set out in the application, was:

"B. C. Emerson, 921 Ashland, Houston, Texas.

"G. C. Emerson, 921 Ashland, Houston, Texas."

In the financial statement required in the application five trucks were listed as belonging to applicants, of the value of $6,000.

Upon such application the Railroad Commission, on March 28, 1932, issued to B. C. and G. C. Emerson a permit, the pertinent parts of which read as follows: "B. C. and G. C. Emerson Truck Line of 921 Ashland Street, Houston, Texas, having complied with all the requirements of chapter 314, Acts Regular Session of the 41st Legislature 1929 as amended at Regular Session of the Forty-Second Legislature, 1931, c. 277 [Vernon's Ann. Civ. St. art. 911b et seq.] applicable to Special Contract Carriers, and having declared an intention not to operate as 'Common Carrier' or 'Contract Carrier' Motor Carrier, is entitled to and is hereby granted a permit to operate as a Special Commodity Carrier within the State of Texas and within the territory as follows:"

Defendant B. C. Emerson testified that he was connected with the B. C. & G. C. Emerson Truck Line. He was then asked by his counsel: "Who owns that truck line?" and he answered: "Well, it is B. C. and G. C. Emerson, a partnership." He testified that he authorized one V. T. Emerson to apply for the permit issued by the Railroad Commission to B. C. & G. C. Emerson Truck Line; that B. C. & G. C. Emerson Truck Line never do any hauling under any other permit than the one above mentioned; that at the time of the accident in question L. L. Emerson was operating the truck under the B. C. & G. C. Emerson permit with the witness' knowledge, consent, and approval, and had been so operating it for several years.

Plaintiff J. H. Park testified that in a few days after the accident in question he went out to the Emersons' place on Ashland street in Houston Heights; that on that occasion he saw and talked with the defendant, B. C. Emerson, about the death of his son, Jesse Park; that he went to the place where the trucks were kept; that he told B. C. Emerson that he wanted to see the manager of the Truck Line and that Emerson told him that he, B. C. Emerson, was one of the owners, but that his father was the manager, and then he said that the truck was being operated by B. C. & G. C. Emerson Truck Lines, and was operated by L. L. Emerson, but the truck belonged to the B. C. & G. C. Emerson Truck Lines and was operated under a permit issued by the Railroad Commission; that he stated that the truck was owned by him and G. C. Emerson.

The undisputed evidence shows that the truck which was being operated by L. L. Emerson at the time and place of the accident in question was operated under the permit issued to B. C. & G. C. Emerson Truck Lines. There was sufficient evidence to authorize the court to submit to the jury special issue No. 4, which we have above copied. Such issue was not the submission of merely an evidentiary fact, but was the submission of an ultimate controlling fact. As already shown, the jury, under ample evidence to support their finding, found that L. L. Emerson was at the time and place in question operating the truck under the direction and control of B. C. and G. C. Emerson, doing business as B. C. & G. C. Emerson Truck Line. The contention of appellants that the submission of issue No. 4 was not in effect the submission of the question as to whether or not L. L. Emerson, the driver of the truck, at the time and place in question, was the agent of the defendants, but the submission of an evidentiary fact only, is, in our opinion, untenable. Certainly one who drives a freight truck owned by another, under the direction and control of such owner, becomes the employee, the servant, and the agent of such owner. To hold otherwise is but an unnecessary and unjustified disregard of the plain meaning of the words used.

The answer of the jury to issue No. 4 is in effect a finding that L. L. Emerson was at said time and place an agent of appellants.

■ We think that the public policy of this state, as expressed in the Motor Bus Law, with reference to the right of a par-

ty to use the public highways for the transportation by motor vehicles, commodities for hire, and as a common carrier, and with reference to the duty to protect the public, will not permit one who acquires a permit from the Railroad Commission to operate as a motor carrier to delegate the rights conferred by such permit to a third party, and by so doing release himself from liability to those injured by the negligence of the wrongfully delegated party. No party to whom such permit is issued should be permitted to transfer to another the rights conferred upon him only by the permit. No person should be permitted to traffic in such permits, for if such can be done the party could indirectly usurp the authority of the Railroad Commission, in that he is undertaking to confer upon another the right conferred upon him only.

In Kellogg v. Church Charity Foundation, 135 App. Div. 839, 120 N. Y. S. 406, it is said: "The privilege of driving an ambulance in derogation of the usual rules of the road extends to a hospital corporation or others similarly engaged, to be exercised in expediting their business, and they are primarily responsible for the just use of the concession, and may not delegate the superior right to a stablekeeper, who furnishes the horse and driver, so as not to be liable for damages for an injury due to the driver's negligence."

On the trial of this cause plaintiffs' attorney offered in evidence the application of B. C. and G. C. Emerson Truck Line to the Railroad Commission for a permit to operate trucks on the highways of Texas for hire, and the permit as granted. Defendants objected to the introduction of this application for the following reason, among others:

Because plaintiffs are suing defendants B. C. and G. C. Emerson in this cause individually and as partners, and have alleged that the truck involved in this case was being operated by their agent and employee at the time of the accident, and that the ultimate issue in this case is whether or not he was such agent and employee, and the introduction of this application and permit could have no bearing whatever on the question of whether or not L. L. Emerson was acting as the agent or employee of B. C. or G. C. Emerson or the Emerson Truck Line at the time of the collision, and the said L. L. Emerson might or might not be the agent or employee of B. C. and G. C. Emerson regardless of whether or not the said B. C. and G. C.

Emerson were operating under a permit, or whether they were operating in disregard of the law or without permit, and the question of whether or not B. C. and G. C. Emerson were operating under a permit at the time of this collision is an immaterial and irrelevant question in this case.

■ The court overruled defendants' objection and permitted the introduction of the application and permit in evidence.

Plaintiffs' counsel then read to the jury the following blank form for application: "Application for a permit to operate a Special Commodity Carrier. Note: Application will not be received and filed unless all requirements and instructions are complied with. Read application blank carefully before filling out. Leave this page blank to be used by the Commission. Application No. 12434. Special Commodity Carrier Permit No., Blank; Applicant's name, blank; address, street, blank; town, blank; state, blank; Record. Filed, blank; name of insurance company, blank; policy No. blank. * * *"

Whereupon counsel for appellants moved the court to declare a mistrial for the following stated reasons: "Because counsel has read a blank space in this permit wherein the statement 'insurance filed blank' was mentioned to the jury, and in the presence of the jury. The insurance company is not a party to this suit, and the mention of insurance in the presence of the jury in this cause is highly prejudicial, inflammatory, and is likely and probably will cause the jury to render a greater verdict in this cause than they would have if the word 'insurance' had not been used; and that such statement is likely to lead the jury to believe that the defendants in this case are covered by insurance, and that the defendants will not have to pay any judgment recovered in this cause, but that the insurance company will pay it, and that such facts are likely to and probably will cause the jury to render a verdict against these defendants when they would not otherwise have been likely to render one if they did not know or did not believe that the defendants were covered by insurance in such cause. Defendants further object to the reading of said statement to the jury because there is no insurance company made a party to this suit, and because it does not appear in any of the pleading or evidence in this case that there is insurance in the case, and it is irrelevant and immaterial to any issue in this case

whether there is insurance in this case or not, and such statement, is, for the reasons stated above, likely to prejudice the rights of these defendants before this jury and is likely to deprive them of the fair trial that they are entitled to under the Constitution and laws of this State."

The court overruled such motion, and appellants by their propositions eight and nine complain of the two rulings of the court last mentioned as constituting reversible errors.

We overrule such contention. Of course appellees had the right to show by the introduction of the application for the permit the nature of the permit applied for and the party or parties making such application, and while we cannot conceive why counsel thought it important to read to the jury the indefinite part of the application we conclude that the reading of the same was harmless. It can hardly be reasonably concluded that a jury of ordinary intelligence would draw a conclusion from the words used in the blank form in question that appellants had a policy of insurance for their protection in the matter in controversy.

We have examined and considered all other propositions made by appellants for a reversal of the judgment, and we overrule them as being without merit, without further comment.

For the reasons pointed out, the judgment is affirmed.

Affirmed.