[No. 13431-1-I. Division One. December 16, 1985.]

SEA FARMS, INC., *Appellant,* v. FOSTER & MARSHALL REALTY, INC., ET AL, *Respondents.*

*Roof, Green & Tolman* and *Jay B. Roof,* for appellant.

*Hackett, Beecher, Hart, Branom & Vavrichek, James M. Beecher, Keller, Rohrback, Waldo & Hiscock,* and *Fred R. Butterworth,* for respondents.

RINGOLD, J.—Sea Farms, Inc., claimed its oyster beds were negligently damaged by the construction of a marina and sued, among others, the developer and project engineer of the marina. The trial court dismissed the claims against the developer and engineer on summary judgment, and Sea Farms appeals.

Design and planning of Semiahmoo Marina in Blaine, Washington, was under way in 1980. Foster & Marshall Realty, Inc., the owner–developer of the project, retained Carl Reichardt to provide engineering services for the project. Foster & Marshall was the successor in interest to

Corps of Engineers and shoreline development permits issued to the original owner.

Sea Farms alleges that during the hydraulic dredging necessary for the construction of the marina, silt was deposited on and damaged oyster beds which Sea Farms leased from the State. The dredging work was performed by a subcontractor. Carl Reichardt designed the plans for the dredging project, but did not supervise the work.

It was anticipated that the material to be dredged would be fine sand. When removed from the bay bottom the sand was deposited in large settling ponds and the waste water was dumped back into the bay. Instead of the fine sand expected, almost all of the dredging spoils were composed of coarse sand and gravel. Sea Farms claims that the heavier material required more water to be pumped through the system, resulting in silt being pumped into the bay and damage to its oyster beds.

Reichardt stated in his deposition that he did not know whether more waste water was required in the pumps for this heavy material than for the fine sand for which the settling ponds were designed. Reichardt moved for summary judgment, stating in his affidavit:

That I prepared the plans and specifications for the project. That I am aware of the standards of engineering practice for this type of project in this region. That my engineering and design work conformed to acceptable engineering standards. That those items designed and specified by me for use relating to the collection or disposal of dredged materials were performed satisfactorily and were not the source of any damage to plaintiff's oyster beds.

Sea Farms responded with an affidavit citing Reichardt's deposition, but did not include any facts that showed Reichardt committed a negligent act. The trial court ruled on the motion, stating:

I am going to grant the motion and summarily dismiss the claims against Carl Reichardt because it seems to me, while the affidavit of the defendant saying he conformed to practices, certainly is suspect, I shouldn't say suspect,

I suppose arguably it is motivated by self–interest, it is an affidavit that I think puts a burden on the opposing party to show that there is expert opinion to contravene, if there is any available.

Foster & Marshall moved for summary judgment because independent contractors were responsible for the alleged negligence, and its motion was also granted by the trial court.

### SUMMARY JUDGMENT AS TO REICHARDT

Reichardt contends that mere allegations are not sufficient to defeat a motion for summary judgment and that expert opinion was required to rebut Reichardt's affidavit. Once a moving party has met its burden of offering factual evidence showing that it is entitled to judgment as a matter of law, the burden shifts to the nonmoving party to set forth specific facts showing that there is a genuine issue for trial. *Graves v. P.J. Taggares Co.,* 94 Wn.2d 298, 302, 616 P.2d 1223 (1980). If the moving party does not sustain that burden, however, summary judgment should not be entered, irrespective of whether the nonmoving party has submitted affidavits or other materials. *Graves,* at 302.

Reichardt's affidavit contains nothing more than a conclusory statement that he was not negligent. Without a recitation of specific facts upon which his conclusions are based, this court cannot consider Reichardt's affidavit when passing upon a motion for summary judgment. *Gunnar v. Brice,* 17 Wn. App. 819, 823, 565 P.2d 1212 (1977). Reichardt, therefore, has not met his burden of demonstrating with factual evidence that he is entitled to summary judgment. In such a situation summary judgment was improper, even though Sea Farms did not submit any evidence that Reichardt was negligent. *Graves.*

### SUMMARY JUDGMENT AS TO FOSTER & MARSHALL

The trial court dismissed the action against Foster & Marshall, concluding that it had delegated to independent contractors a duty to others arising from the dredging operations. Thus the sole issue presented is whether Foster

& Marshall may be held liable for negligence when the control and manner of accomplishing the dredging was the responsibility of an independent contractor.

Sea Farms contends that Foster & Marshall had a non-delegable duty of care for three reasons. First, Foster & Marshall was a successor in the interest to permits necessary for the construction of the marina, and the permits imposed a duty on Foster & Marshall to "make every reasonable effort . . . to minimize any adverse impact of the work on fish, wildlife and natural environmental values." Second, Sea Farms asserts that Foster & Marshall cannot delegate the duty imposed by RCW 90.48.080 not to pollute state waters.[1] Third, Sea Farms claims that dredging is inherently dangerous, and, therefore, a landowner may not delegate his duty of care to an independent contractor.

As a general rule, the employer of an independent contractor is only liable if the contractor is negligently selected. Exceptions to the general rule exist if public policy dictates that an owner's duty be nondelegable. A scholarly authority states the principle as follows:

> Where there is a foreseeable risk of harm to others unless precautions are taken, it is his duty to exercise reasonable care to select a competent, experienced, and careful contractor with the proper equipment, and to provide, in the contract or otherwise, for such precautions as reasonably appear to be called for. . . . If the work is done on the employer's own land, he will be required to exercise reasonable care to prevent activities or conditions which are dangerous to those outside of it . . .

W. Keeton, D. Dobbs, R. Keeton & D. Owen, *Prosser and Keeton on Torts* § 71, at 510–11 (5th ed. 1984). Prosser explicates cases of nondelegable duty, stating: "Such a duty may be imposed by statute, by contract, by franchise or

---

[1]RCW 90.48.080 provides: "It shall be unlawful for any person to throw, drain, run, or otherwise discharge into any of the waters of this state, or to cause, permit or suffer to be thrown, run, drained, allowed to seep or otherwise discharged into such waters any organic or inorganic matter that shall cause or tend to cause pollution of such waters according to the determination of the commission, as provided for in this chapter."

charter, or by the common law." *Prosser and Keeton on Torts,* at 511.

The Supreme Court recently reapproved the rule and stated: "[W]hen an owner is operating under a public franchise, or when a statute imposes a duty, or in inherently dangerous situations, an owner cannot delegate his or her duty of care toward 'others' to an independent contractor and escape liability." *Tauscher v. Puget Sound Power & Light Co.,* 96 Wn.2d 274, 287, 635 P.2d 426 (1981).

### Permit

The parties do not dispute that Foster & Marshall succeeded in interest to the permits required for the dredging operation.[2] In an analogous situation when referring to a general contractor who obtained a building permit, the Supreme Court stated: "He was under a duty to perform the conditions of the permit, or else see that they were performed. He incurred a duty that was non–delegable." *Amann v. Tacoma,* 170 Wash. 296, 309, 16 P.2d 601 (1932). The general contractor was held liable for the acts of the subcontractor because the obligations of the permit were nondelegable.

In the present case, the original owner obtained the necessary permits, not the general contractor, and Foster & Marshall as successor in interest cannot escape liability from failure to follow the proscriptions of the permit. *See Amann.*

### Statute

As previously indicated, statutes have been interpreted as imposing nondelegable duties. *Tauscher; see Kelley v. Howard S. Wright Constr. Co.,* 90 Wn.2d 323, 582 P.2d 500 (1978) (statute created nondelegable duty to fur-

---

[2]The permits provide in part: "(d) That *the permittee* agrees to make every reasonable effort to prosecute the work authorized herein in a manner so as to minimize any adverse impact of the work on fish, wildlife and natural environmental values. (e) That *the permittee* agrees to prosecute the work authorized herein in a manner so as to minimize any degradation of water quality." (Italics ours.)

nish a safe place of work). RCW 90.48.080 makes it unlawful for any person to "permit or suffer" pollution of state waters. This language indicates the legislative intent to prohibit landowners from polluting their own waters as well as that of others. Thus the duty to refrain from acts which will pollute waters on another's land may not be delegated to an independent contractor.

### Inherently Dangerous Activity

An owner may be liable for the negligence of an independent contractor if the work is inherently dangerous or if the work undertaken is likely to be peculiarly dangerous unless special precautions are taken. *Kelley,* at 332; Restatement (Second) of Torts §§ 416, 427 (1965). "Neither phrase has ever yet been very well defined by anyone, and they are apparently intended to mean very much the same thing." *Prosser and Keeton on Torts,* at 512.

█ Whether dredging in water projects is inherently dangerous need not be considered. We believe that such dredging as was carried on here may create a peculiar risk of the type of harm alleged, thus creating a nondelegable common law duty. The Supreme Court has recognized common law exceptions to the general rule of nonliability. *Tauscher,* at 277; *Kelley.*

Foster & Marshall presented no evidence to demonstrate that the dredging here did not create a peculiar risk of silt being deposited on the surrounding area. This court must resolve doubt in favor of the nonmoving party. *See Wilson v. Steinbach,* 98 Wn.2d 434, 437, 656 P.2d 1030 (1982). The order dismissing Foster & Marshall was in error.

We reverse and remand for trial.

WILLIAMS and COLEMAN, JJ., concur.

Review denied by Supreme Court February 21, 1986.