[No. 20675–3–I.   Division One.   January 9, 1989.]

HAAKON RAGDE, ET AL, *Appellants,* v. PEOPLES BANK,
ET AL, *Respondents.*

WILLIAMS, J., concurs by separate opinion.

*Timothy C. Farris, Mary K. Becker,* and *Brett & Daugert,* for appellants.

*Thomas D. Loftus,* for respondent Peoples Bank.

*James M. Beecher, Barbara J. Boyd,* and *Hackett, Beecher, Hart, Branom & Webster,* for respondent Seattle Recovery Services, Inc.

WINSOR, J.—Haakon and Kerstin Ragde (Ragde) appeal from orders of summary judgment dismissing personal injury and emotional distress claims arising from an automobile repossession. Peoples Bank (Peoples) cross–appeals, contending the trial court erred in denying its motion to strike Ragde's expert's affidavit opposing summary judgment. We affirm the summary judgment orders.

In December 1983, Ragde executed a $94,502.60 90–day unsecured commercial demand note in favor of Peoples. The note consolidated Ragde's preexisting notes and withdrawals. In January 1984, Peoples renewed the 90–day note for 1 year, after Ragde offered a deed of trust in his residence, and a security interest in his 1976 and 1974 Mercedes automobiles, as security.

The renewed note matured on March 27, 1985, with a principal balance owing of $93,502.60. Ragde did not make payment and was unable to set up a payment plan. By letter dated April 26, 1985, Peoples advised Ragde that "[i]f full payment is not received within ten (10) days of the date of this letter (May 6, 1985), we must pursue other means to protect the Bank's interest."

On May 7, 1985, Ragde called Pablo Lambinicio, the Peoples officer assigned to the note, to discuss Peoples' demand letter. Ragde explained that due to recent back surgery and financial problems, it would be most difficult for him to make any principal payments during 1985. He also indicated he probably would declare bankruptcy in the near future.

Ragde contends that during the May 7 conversation, he told Lambinicio that Peoples should not have anything to worry about because the note was secured, and that Lambinicio replied that Peoples was "not worried." Ragde also contends Lambinicio assured him Peoples was satisfied with its security. Lambinicio denies both of these contentions.

Peoples decided to repossess the cars in which it held a security interest. It contracted with Seattle Recovery Services, Inc. (SRS) to carry out the repossession. At about 5 a.m. on May 23, 1985, two SRS tow trucks retrieved the cars from Ragde's driveway. For the tow truck drivers, the repossession was uneventful. No confrontation or verbal exchange occurred. One driver did notice a man watching from Ragde's front door as the trucks pulled away. The man did not say anything, nor did he attempt to chase the tow trucks.

Ragde's bedroom was 10 to 15 feet from the area from which the cars were repossessed. Ragde alleges the repossession caused a "tremendous ruckus," and that this ruckus awakened him, causing him to leap out of bed, fall onto some furniture, and hurt his back. Ragde contends that as a result of this fall he had to undergo additional back surgery and suffered temporary partial paralysis. He also contends that the repossession was particularly frightening because his home is in a remote, normally quiet, residential area, and that it caused him severe emotional and mental shock.

Ragde filed a complaint against Peoples and SRS for damages resulting from the repossession. Ragde raised trespass, breach of the peace, breach of the Uniform Commercial Code, negligence, outrage, and intentional infliction of emotional distress claims.[1] Peoples and SRS moved for summary judgment dismissing all claims against them. Ragde's response included an "expert affidavit" in which Per–Odd Keul, an employee of another bank, opined that Peoples was negligent in ordering the repossession; Ragde presented no risk of secreting the vehicles; and Peoples breached its duty of care to Ragde. Peoples moved to strike this affidavit. The court denied Peoples' motion to strike, but granted both summary judgment motions. Ragde appeals from the orders granting summary judgment; Peoples cross–appeals from the denial of its motion to strike.

## BREACH OF THE PEACE

RCW 62A.9–503 empowers a secured creditor to take possession of collateral upon default by the debtor, provided the creditor can do so without a "breach of the peace." When a repossession results in a "breach of the peace," the creditor is liable for resultant damages, including damages for personal injuries sustained by the debtor in resisting the repossession. *Burgin v. Universal Credit Co.,* 2 Wn.2d 364, 98 P.2d 291 (1940); *Roberts v. Speck,* 169 Wash. 613, 14 P.2d 33 (1932).

---

[1]On appeal, Ragde does not assert his negligence or trespass claims.

Ragde contends that because the repossession at issue here was conducted at night, in his driveway, in a remote and private area, it breached the peace. He argues that a breach of the peace need not involve a physical confrontation, but includes acts likely to provoke disturbance. According to Ragde, a "night raid" that causes a "tremendous ruckus" in a secluded residential neighborhood has potential for provoking a disturbance, and therefore it should be a jury question as to whether such a repossession is in fact a breach of the peace.

We agree that a breach of the peace does not necessarily require a physical confrontation. In *Stone Mach. Co. v. Kessler*, 1 Wn. App. 750, 463 P.2d 651 (1970), the court quoted with approval the following definitions of breach of the peace:

> A breach of the peace is a public offense done by violence, or one causing or likely to cause an immediate disturbance of public order.
>
> . . .
>
> To constitute a "breach of the peace" it is not necessary that the peace be actually broken, and if what is done is unjustifiable and unlawful, tending with sufficient directness to break the peace, no more is required, nor is actual personal violence an essential element of the offense.

*Stone Mach. Co.*, 1 Wn. App. at 754 (quoting Restatement (Second) of Torts § 116 (1965); *McKee v. State*, 75 Okla. Crim. 390, 132 P.2d 173 (1942)).

■ We do not agree, however, that the repossession here breached the peace. First, Ragde offers no support for his conclusory statement that the repossession caused a "tremendous ruckus." Conclusory statements do not create a question of fact sufficient to defeat a motion for summary judgment. *E.g., Sea Farms, Inc. v. Foster & Marshall Realty, Inc.*, 42 Wn. App. 308, 311 711 P.2d 1049 (1985), *review denied*, 105 Wn.2d 1010 (1986). In any event, Ragde offers no legal authority for his position that noise alone can be a breach of the peace for purposes of RCW 62A.9–503. Without such authority, we are unwilling to hold that

making noise is an act likely to break the peace. *Kessler,* 1 Wn. App. at 754.

Second, Ragde's argument that a "night raid" is a breach of the peace is without legal basis. Although there is little case law on the "night raid" issue, the Arkansas Supreme Court recently held that a 4 a.m. repossession from the debtor's driveway was not a breach of the peace, reasoning:

> There is no evidence that McClendon entered any gates, doors, or other barricades to reach the truck. He just attached the truck to his wrecker in the dead of the night and drove away. There was no confrontation with Baldwin. He was asleep when the truck was repossessed. The repossession was accomplished without breaching the peace according to our cases.

*Oaklawn Bank v. Baldwin,* 289 Ark. 79, 81, 709 S.W.2d 91 (1986). The *Oaklawn Bank* approach is persuasive. So long as the law permits automobiles to be repossessed from residential property, it is reasonable to allow the repossession to occur in the early morning hours. At that hour, a confrontation with the debtor is likely avoided, and the debtor is not subjected to the humiliation of having his or her automobile repossessed from a public place. Moreover,

> the business community must be given some latitude to pursue reasonable methods of collecting debts even though such methods often might result in some inconvenience or embarrassment to the debtor.

*Jackson v. Peoples Fed. Credit Union,* 25 Wn. App. 81, 84–85, 604 P.2d 1025 (1979), citing *Dawson v. Associates Fin. Servs. Co. of Kan., Inc.,* 215 Kan. 814, 821, 529 P.2d 104 (1974). We hold that the circumstances of the Ragde repossession did not amount to a breach of the peace. The orders of summary judgment are affirmed.

The remainder of this opinion has no precedential value. Therefore, it will not be published, but it has been filed for public record. *See* RCW 2.06.040; CAR 14.

WEBSTER, J., concurs.

WILLIAMS, J.[2] (concurring)—Because Ragde did not pay his debt, Peoples' repossession of the two automobiles pledged as collateral was both justified and lawful. RCW 62A.9–503 reads in pertinent part:

In taking possession a secured party may proceed without judicial process if this can be done without breach of the peace . . .

On the motion for summary judgment, Ragde presented no evidence of a breach of the peace.

I therefore join in affirming the judgment of dismissal.

---

[2]Judge Ward Williams prepared and signed this opinion prior to his retirement on January 8, 1989.