**MBANK EL PASO, N.A., Petitioner,**

v.

**Yvonne SANCHEZ, Respondent.**

**No. D–0233.**

Supreme Court of Texas.

July 1, 1992.

Rehearing Overruled Oct. 7, 1992.

Royal Furgeson, Jr., Philip R. Martinez, Lauren K. Specht, El Paso, for petitioner.

David S. Arditti, Patrick L. Quinn, Victor R. Arditti, El Paso, for respondent.

OPINION

MAUZY, Justice.

Section 9.503 of the Texas Business and Commerce Code allows a secured creditor to use nonjudicial repossession "if this can

be done without breach of the peace." The issue in this case is whether a secured creditor may avoid liability for breaches of the peace by using an independent contractor to carry out repossession. The court of appeals, applying section 9.503, held that a creditor cannot delegate the duty of peaceable repossession to an independent contractor. 792 S.W.2d 530. We agree, and therefore affirm.

MBank El Paso hired El Paso Recovery Service to repossess Yvonne Sanchez's automobile because of her default on a note. Two men dispatched to Sanchez's home found the car parked in the driveway, and hooked it to a tow truck. Sanchez demanded that they cease their efforts and leave the premises; but the men nonetheless continued with the repossession. Before the men could tow the automobile into the street, Sanchez jumped into the car, locked the doors, and refused to leave. The men then towed the car at a high rate of speed, with Sanchez inside, to the repossession yard. They parked the car in the fenced repossession yard and padlocked the gate. Sanchez was left in the repossession lot, with a Doberman pinscher guard dog loose in the yard, until later rescued by her husband and police.[1]

Sanchez filed suit against MBank, alleging that it was liable for the tortious acts of El Paso Recovery Service. MBank moved for summary judgment on the ground that El Paso Recovery Service was an independent contractor for whom MBank bore no responsibility. The trial court granted summary judgment in favor of MBank. The court of appeals reversed,

holding that section 9.503 of the Texas Business and Commerce Code imposes a nondelegable duty on a secured party pursuing nonjudicial repossession to do so without breaching the peace. 792 S.W.2d at 532.[2]

MBank acknowledges that section 9.503 imposes a duty on a secured party not to breach the peace, but argues that the secured party may delegate that duty to an independent contractor. We disagree.

Section 9–503 of the Uniform Commercial Code (UCC) provides in part:

Unless otherwise agreed a secured party has on default the right to take possession of the collateral. In taking possession a secured party may proceed without judicial process *if this can be done without breach of the peace* or may proceed by action.

Tex.Bus. & Comm.Code § 9.503 (emphasis added). This provision, by its terms, gives a secured party two choices: it may repossess the collateral "if this can be done without breach of the peace," or it may take legal action. If the secured party chooses the first of those options, it runs the risk that the repossession may, in fact, breach the peace. When that happens, the secured party may be held liable in tort.[3]

The rule imposing liability on secured parties for breaches of the peace is based on longstanding policy concerns regarding the exercise of force or violence. *See Godwin v. Stanley,* 331 S.W.2d 341, 342–43 (Tex.Civ.App.—Amarillo 1959, writ ref'd n.r.e.). The preservation of peace, courts recognize, "is of more importance to society than the right of the owner of a chattel

---

1. MBank has conceded throughout this proceeding that the facts alleged amount to a breach of the peace. Thus, for the purpose of this writing, we assume that a breach of the peace occurred.

2. The court of appeals also held that nonjudicial repossession is an inherently dangerous activity, so that a secured creditor remains liable for physical harm resulting from the contractor's failure to take precautions against the danger. *See* Restatement (Second) of Torts § 427 (1965). Because of our disposition of the nondelegability issue, we do not reach this alternative ground for the court of appeals' holding.

3. *See, e.g., Griffith v. Valley of Sun Recovery and Adjustment Bureau, Inc.,* 126 Ariz. 227, 613 P.2d 1283, 1286 (1980); *Henderson v. Security Nat'l Bank,* 72 Cal.App.3d 764, 770, 140 Cal.Rptr. 388, 391 (1977); *Thrasher v. First Nat'l Bank,* 288 So.2d 288, 289 (Fla.Dist.Ct.App.1974); *Whisenhunt v. Allen Parker Co.,* 119 Ga.App. 813, 168 S.E.2d 827 (1969); *Van Bibber v. Norris,* 404 N.E.2d 1365 (Ind.App.1980); *Benschoter v. First Nat'l Bank,* 218 Kan. 144, 542 P.2d 1042, 1049 (1975), *app. dismissed,* 425 U.S. 928, 96 S.Ct. 1656, 48 L.Ed.2d 170 (1976); *Morris v. First Nat'l Bank and Trust Co.,* 21 Ohio St.2d 25, 30, 254 N.E.2d 683, 686–87 (1970); *General Elec. Credit Corp. v. Timbrook,* 170 W.Va. 143, 291 S.E.2d 383, 385 (1982).

to get possession of it." *Willis v. Whittle,* 82 S.C. 500, 64 S.E. 410 (1909). *See also Singer Sewing Mach. Co. v. Phipps,* 49 Ind.App. 116, 94 N.E. 793 (1911) (quoting 3 WILLIAM BLACKSTONE, COMMENTARIES *4) ("[T]his natural right of recaption shall never be exerted, where such exertion must occasion strife ... or endanger the peace of society.").

■ As a general rule, when a duty is imposed by law on the basis of concerns for public safety, the party bearing the duty cannot escape it by delegating it to an independent contractor. Section 424 of the Restatement (Second) of Torts (1965) provides:

> One who by statute or by administrative regulation is under a duty to provide specified safeguards or precautions for the safety of others is subject to liability to the others for whose protection the duty is imposed for harm caused by the failure of a contractor employed by him to provide such safeguards or precautions.

Comment a to section 424 further explains that a duty to take safety precautions cannot be delegated to an independent contractor:

> The rule stated in this Section applies whenever a statute or an administrative regulation imposes a duty upon one doing particular work to provide safeguards or precautions for the safety of others. In such a case the employer cannot delegate his duty to provide such safeguards or precautions to an independent contractor.

*See also Bond v. Otis Elevator Co.,* 388 S.W.2d 681, 685–86 (Tex.1965) (building proprietor has a nondelegable duty to maintain elevators in safe condition); *Berry v. Golden Light Coffee Co.,* 160 Tex. 128, 327 S.W.2d 436, 439 (1959) (motor carrier has a nondelegable duty to prevent tortious injury to its customers).

■ We believe that section 9–503 of the UCC imposes a duty on secured creditors pursuing nonjudicial repossession to take precautions for public safety. *See, e.g., Nichols v. Metropolitan Bank,* 435 N.W.2d 637, 641 (Minn.Ct.App.1989) ("a secured party must ensure there is no risk of harm to the debtor and others if the secured party chooses to repossess collateral by self-help methods"), *pet. for review denied* (Minn.1989); *General Fin. Corp. v. Smith,* 505 So.2d 1045, 1048 (Ala.1987) ("A secured party is under a duty to take those precautions which are necessary at the time to avoid a breach of the peace."). Applying section 424 of the Restatement, a secured creditor is prohibited from delegating this duty to an independent contractor. *See Nichols,* 435 N.W.2d at 640; *Smith,* 505 So.2d at 1048.

Other jurisdictions agree that a creditor cannot escape the duty of peaceable repossession by delegating it to an independent contractor. *See General Fin. Corp. v. Smith,* 505 So.2d at 1048; *Sammons v. Broward Bank,* 599 So.2d 1018, 1021 (Fla. Dist.Ct.App.1992); *Massengill v. Indiana Nat'l Bank,* 550 N.E.2d 97, 99 (Ind.Ct.App. 1990); *Nichols v. Metropolitan Bank,* 435 N.W.2d at 640; *McCall v. Owens,* 820 S.W.2d 748, 751–52 (Tenn.Ct.App.), *appeal denied* (Tenn.1991); *Ragde v. Peoples Bank,* 53 Wash.App. 173, 767 P.2d 949, 950 (1989);[4] *see also Henderson v. Security Nat'l Bank,* 72 Cal.App.3d 764, 140 Cal.

---

**4.** The dissenting opinion by Justice Cook dismisses the *Ragde* decision with the assertion that it "did not raise the issue we consider in this case," 836 S.W.2d at 157, and the dissenting opinion by Justice Hecht similarly declines to acknowledge the case. In *Ragde,* Peoples Bank had contracted with Seattle Recovery Services (SRS) to repossess Ragde's car. Ragde subsequently sued both the Bank and SRS, raising claims including breach of the peace and breach of the UCC. After the trial court granted summary judgment for the defendants, the appellate court held:

> [Section 9–503] empowers a secured creditor to take possession of collateral upon default by the debtor, provided the creditor can do so without a "breach of the peace." When a repossession results in a "breach of the peace," *the creditor is liable* for resultant damages, including damages for personal injuries sustained by the debtor in resisting the repossession.

767 P.2d at 950 (emphasis added). Thus, facing the same issue we face today, the *Ragde* court indicated that a creditor is liable for torts committed when its independent contractor breaches the peace.

Rptr. 388, 390–91 (1979) (bank held liable for torts committed by its independent contractor in the course of repossession); *Southern Indus. Sav. Bank v. Greene,* 224 So.2d 416, 418 (Fla.Dist.Ct.App.1969) ("Once having chosen this remedy [of repossession under section 9–503], the instituting party subjects *itself* to any liability due to negligence in the course of enforcement."); *Cottam v. Heppner,* 777 P.2d 468, 472 (Utah 1989) ("By negative implication, [section 9–503] prohibits repossessions that involve a breach of the peace.").[5]

The legislative history in Texas of the adoption of section 9.503 supports the same conclusion. The Texas UCC states that it was intended, in part, "to make uniform the law among the various jurisdictions." Tex.Bus. & Comm.Code § 1.102(b)(3). Additionally, to emphasize this intent, the legislature has adopted a separate statute stating that "[a] uniform act included in a code shall be construed to effect its general purpose to make uniform the law of those states that enact it." Tex. Gov't Code § 311.028. Since other states have generally considered the duty of peaceable repossession nondelegable, the legislature presumably intended the same rule to apply here.

■ A secured creditor certainly has a strong interest in obtaining collateral from a defaulting debtor. That interest, however, must be balanced against society's interest in the public peace. If a creditor chooses to pursue self-help, it must be expected to take precautions in doing so. If this burden is too heavy, the creditor may seek relief by turning to the courts. *See* Tex.Bus. & Comm.Code § 9.503 ("In taking possession a secured party may proceed without judicial process if this can be done without breach of the peace *or may proceed by action.*"); *see also General Elec. Credit Corp. v. Timbrook,* 291 S.E.2d at 385.[6] By pursuing a legal remedy, a creditor shifts the responsibility for repossession to officers of the law. *See Southern Indus. Sav. Bank v. Greene,* 224 So.2d at 418.[7]

Because the Bank chose to pursue nonjudicial repossession, it assumed the risk that a breach of the peace might occur. *See id.* ("[T]he bank having chosen its remedy must stand by the attendant duties and liabilities thereof.").[8] Under section 424 of the Restatement (Second) of Torts, the Bank remains liable for breaches of the peace committed by its independent contractor.[9] We therefore affirm the judgment of the court of appeals.

Dissenting opinion by Justice COOK.

---

**5.** Neither of the dissenting opinions cites a single decision from any state reaching a contrary result. To downplay the agreement among other jurisdictions, the dissenting opinion by Justice Cook notes that the *Smith* court is "the only supreme court which has written on the issue we face today." 836 S.W.2d at 157. It fails to note, however, that the Supreme Courts of Minnesota and Tennessee both chose to leave intact lower-court holdings imposing liability on secured creditors for torts committed by their independent contractors in the course of repossession. *See Nichols v. Metropolitan Bank,* 435 N.W.2d at 640; *McCall v. Owens,* 820 S.W.2d at 751–52.

**6.** "Creditors have other options [in addition to repossession] that do not threaten rights that our laws have always jealously protected. If there can be no repossession without peace breaching, they can sue."

**7.** "Once having chosen this remedy [of repossession under UCC section 9–503], the instituting party subjects *itself* to any liability due to negli-gence arising in the course of enforcement. This would not be the case had the appellants chosen the legal remedy of replevin, whereby the *legal officer* executing the writ of replevin is primarily liable for damages arising from his actions."

**8.** The Bank could have mitigated the attendant risks by undertaking repossession itself, or by taking sufficient precautions to ensure that its contractor would not breach the peace. To the extent that it failed to do so, the Bank was not acting as "honestly and carefully" as the dissenting opinion by Justice Cook suggests. 836 S.W.2d at 158.

**9.** Since the availability of punitive damages against the Bank is neither briefed nor argued by either party, we do not reach that question. *Compare McCall v. Owens,* 820 S.W.2d at 752 (punitive damages are recoverable) *with General Fin. Corp. v. Smith,* 505 So.2d at 1049 (Torbert, C.J., concurring) (punitive damages are available only if the creditor "authorized, participated in, or ratified the independent contractor's acts").

Dissenting opinion by Justice HECHT joined by Justices GONZALEZ and CORNYN.

COOK, Justice, dissenting.

With this decision, the court creates strict liability where it is not warranted. I must respectfully dissent.

If the plaintiff in this case goes back to trial and proves that the repossessor committed a breach of the peace, then the bank which hired the contractor is liable. Liability is absolute and extreme. The bank has no defenses, outside of proving that no breach of the peace occurred. Even if the bank had no knowledge of the contractor's actions, the bank cannot defend. Even if the bank expressly ordered the contractor to proceed cautiously, the bank cannot protest. Even if the bank did not knowingly or recklessly violate the statute, the bank will be exposed to punitive damages.

Why has the court created such unyielding liability? The facts in this case certainly invite such a response. They are egregious. No repossessor has the right to breach the peace, and certainly not so blatantly as the facts here indicate. It does not matter that the plaintiff had twice before had the car repossessed. And it does not matter that she jumped into the car when the wrecker was attached and refused to leave. If the public peace is threatened, then the repossessor violates the statute.

But as disturbing as the facts are, I cannot join in this decision. It has no support in either Texas law or the Restatement. And the decision has unjustifiably severe consequences for creditors who hire independent contractors to enforce their rights. Accordingly, I dissent.

## I. LIABILITY AND DAMAGES

The claims in this case, as in most other wrongful repossession cases, include tort claims. The plaintiff sued for false imprisonment as well the section 9.503 claim.[1] If we construe her pleadings liberally, we con-

clude she brought negligence claims. Damages sought are $250,000 compensatory and $1,000,000 punitive.

Under the decision delivered today, the bank is potentially liable for all claims and all resulting damages, as though the bank itself had executed the repossession. This is so because one who performs a nondelegable duty for the principal is a vice-principal. *See Fort Worth Elevators Co. v. Russell,* 123 Tex. 128, 70 S.W.2d 397, 406 (1934); *Southwestern Bell Telephone Co. v. Reeves,* 578 S.W.2d 795, 800 (Tex.Civ. App.—Houston [1st Dist.] 1979, writ ref'd n.r.e.). A vice principal's acts are the acts of the principal, and the principal is liable as though he himself performed them. *Fort Worth,* 70 S.W.2d at 406. Liability extends to all damages, whether compensatory or punitive. *Id.; Southwestern Bell,* 578 S.W.2d at 800.

This extreme liability takes the bank beyond the law of the Uniform Commercial Code. Under the Code, damages are expressly limited and defined. *See* TEX.BUS. & COM.CODE ANN. § 9.507 (Vernon 1991) [hereinafter UCC]. Punitive damages are not available. *Id.; see also* § 1.106 (Vernon 1991).

Those who read today's decision may argue that damages are limited by the UCC. After all, the break in the independent contractor relationship was made through a UCC provision. But I find no authority to support the proposition that, once the independent contractor relationship is destroyed by a nondelegable duty, it is destroyed in some limited way, so that the bank may be liable for statutory damages but insulated from the full range of tort damages. It is more consistent with the law to recognize that the independent contractor relationship is destroyed for all claims arising out of facts such as those presented in this case, and to accept that the bank may now be held liable for all resulting damages.

---

1. The plaintiff did not sue for trespass or conversion, two claims which frequently appear in wrongful repossession cases.

## II. NEED FOR A NEW EXCEPTION

Before destroying the employer-independent contractor relationship under the repossession statute or any other, we should consider whether Texas law requires such a change. A valid reason for change is lack of a remedy for injured parties. Stated in the context of this case: Do plaintiffs injured by wrongful repossessions already have a means of reaching the employers of independent contractors? They do.

Plaintiffs in wrongful repossession cases may reach beyond the independent contractor to the employer through one of many previously-recognized exceptions to the rule of employer non-liability. The exception which first comes to mind in these cases is the negligent hiring exception. *See, e.g., Smith v. Baptist Memorial Hosp. System*, 720 S.W.2d 618 (Tex.App.1986). Under this exception, the plaintiff has a cause of action for negligence in hiring the repossessor. *Id.* The exception has long provided plaintiffs like Mrs. Sanchez the means to reach employers who have carelessly hired their contractors. *See generally* Restatement (Second) Torts § 411 (1965) [hereinafter Restatement].

## III. THE RESTATEMENT

The words of the statute under discussion do not expressly impose a nondelegable duty upon the bank. To support an interpretation that imposes such a duty, the majority must go to other sources. Chief among them is the Restatement.

The Restatement sets out a number of exceptions to the rule that employers are not liable for the acts of independent contractors. Among these is an exception based on the precautions required by certain statutes:

§ 424. Precautions Required by Statute or Regulation

One who by statute or administrative regulation is under a duty to provide *specified* safeguards or precautions for the safety of others is subject to liability to the others for whose protection the duty is imposed for harm caused by the failure of a contractor employed by him to provide such safeguards or precautions.

Restatement § 424 (emphasis added).

The critical term in this section is "specified." The only statutes imposing a nondelegable duty are those which require specificity. Under our repossession statute, the duty to avoid breach of the peace is general. No specific safeguards or precautions are set out, either in the language of the statute or in the comments to it. *See* TEX.BUS. & COM.CODE ANN. § 9.503 (Vernon Supp.1992). Our repossession statute, therefore, does not fall under the exception described in the Restatement.

That exception is rare in Texas law, but it does arise out of one group of statutes. Certain statutes governing common carriers give rise to nondelegable duties. *See, e.g., Berry v. Golden Light Coffee Co.*, 160 Tex. 128, 327 S.W.2d 436 (1959); *Wardlow v. Newberry*, 319 S.W.2d 437 (Tex.Civ.App.—Eastland 1958, no writ); *Emerson v. Park*, 84 S.W.2d 1100 (Tex.Civ.App.—Galveston 1935, writ dism'd). An examination of these cases reveals the distinction between a statute which falls under the Restatement section and a statute which does not.

*Wardlow* was a wrongful death suit which arose out of an automobile-truck collision. Weathersby owned the truck. It was leased to Wardlow, who held the Railroad Commission permit to operate the truck. The plaintiff sued Weathersby, Wardlow, and the truck driver. Wardlow claimed that Weathersby was an independent contractor and that Wardlow was not liable for Weathersby's actions. This was so because the only purpose of the lease agreement between Wardlow and Weathersby was to allow Weathersby to operate the truck under Wardlow's Railroad Commission permit. Wardlow argued that his office was simply a clearing house for purchase orders and receipts and that he had no control over the drivers. According to Wardlow, the mere use of his permit by Weathersby was not enough to place liability upon Wardlow.

Based on the statutes governing motor vehicles for hire, the court rejected Ward-

low's argument. *Id.* at 442. The court stated that the right to operate a motor vehicle for hire is a non-delegable right. *Id.*

The statutes upon which the court based its decision state that their purpose is to insure safer highways. *Id.* at 440; *see also Berry,* 327 S.W.2d at 438. The statutes authorize the award of permits to carry commodities by a particular state agency to particular persons after specific application procedures. *Wardlow,* 319 S.W.2d at 440. They limit and name the entities which can operate a vehicle for hire. *Id.* Furthermore, the statutes provide that anyone who operates under a valid permit is an agent of and under the control of the permit holder. *Id.* at 440; *see also Emerson,* 84 S.W.2d at 1103.

Our repossession statute, in contrast to the common carrier statutes, does not limit and name those who may carry out a self-help repossession. Nor does the statute require anything like a license or a permit to repossess. The repossession statute does state that the secured party retains control over anyone who carries out the repossession. In sum, the repossession statute is not specific enough, under the Restatement, to justify an exception to the independent contractor rule and imposition of strict liability upon an employer.

## IV. OUT–OF–STATE LAW

Out-of-state cases often assist us in decisions, and we should take advantage of what we can learn from the analysis of other courts.[2] Reliance upon these decisions, however, should be tempered by the understanding that they grow out of generations of the law of another state. There may be underpinnings which support the decision that do not support the same decision here. To illustrate, I suggest we look closely at the decision of the Alabama Supreme Court in *General Fin. Corp. v. Smith,* 505 So.2d 1045 (Ala.1987). This court is the only supreme court which has written on the issue we face today. The Alabama Supreme Court interpreted a repossession statute identical to our own to decide that the statute imposed a nondelegable duty. In reaching its decision, the Alabama Supreme Court conceded that the Alabama legislature had not specified the safeguards or precautions which a secured party may take to effect a peaceful repossession. Nevertheless, the court concluded that "by implication, a secured party is under a duty to take those precautions which are necessary at the time to avoid a breach of the peace." *Id.* at 1048.

I initially note that the words "by implication" indicate that the Alabama Supreme Court has greater liberty than we in statutory interpretation. Texas law does not give us the power to insert words which the legislature has omitted in drafting statutes. *See Seay v. Hall,* 677 S.W.2d 19, 25 (Tex.1984).

A deeper analysis leads to questions about what the opinion does to the Alabama law governing independent contractors and their employers. Does the decision represent a logical next step or was it a departure from Alabama's law?

---

**2.** The court cites the case law of six states for the proposition that the UCC's self-help repossession statute imposes a nondelegable duty. Four involve decisions of appellate courts, and one is the decision of a supreme court. The sixth did not raise the issue we consider in this case. The court adds a "see also" cite to three other cases. The three cases do not raise the issue.

The first two of these cases were *Nichols v. Metro. Bank* and *Massengill v. Indiana Nat'l Bank. Nichols,* 435 N.W.2d 637 (Minn.Ct.App. 1989), *pet. for review denied* (Minn.1989); *Massengill,* 550 N.E.2d 97 (Ind.Ct.App.1990). The opinions are of limited usefulness in helping us develop our own employer-independent contractor law because of their sparse analysis.

They step directly from recognition of a statutory duty to the conclusion of nondelegability. The Indiana court makes clear that if a statute imposes "a clear statutory duty," then "the contractee cannot delegate...." *Massengill,* 550 N.E.2d at 99. The Minnesota court's reasoning is slightly more detailed but follows the same path: "The duty to repossess property in a peaceable manner is specifically imposed on a 'secured party.' ... Accordingly, a secured party may not delegate...." *Nichols,* 435 N.W.2d at 640.

The two remaining states which have found a nondelegable duty in the repossession statute rely upon the decisions which have gone before and follow their reasoning.

When we take a step back into Alabama law, we find that Alabama law regarding independent contractors has developed somewhat differently from our own. In Alabama, the non-delegable duty exception is well-recognized and broad. In *State Farm Mutual Automobile Ins. Co. v. Dodd*, 276 Ala. 410, 162 So.2d 621 (1964), the court discussed the history of the non-delegable duty exception, citing a line of cases which run back to 1889. *Id.* 162 So.2d at 626–27. Many of these cases expressly use the term "nondelegable duty" and develop the rule that an employer may not escape tort liability for negligence in performing such a duty by hiring an independent contractor. *Id.* The nondelegable duty may arise out of a contract or law. *Id.* In *State Farm*, it arose out of contract. The court held that an insurance company was liable, under contract, for harm resulting from automobile repairs done by a garage which the company had hired. *Id.*, 162 So.2d at 628. In *Robertson v. City of Tuscaloosa*, 413 So.2d 1064 (Ala. 1982), the Alabama Supreme Court made clear that the nondelegable duty exception could arise from a statute. *Id.* at 1066.

The line of cases preceding the decision explains why the Alabama Supreme Court was able to deliver a unanimous, per curiam opinion in *General Finance*. The precedent supporting the court was overwhelming, the exception developed, the rule familiar. In our own case, creation of strict liability by application of the exception is a major decision, one which constitutes a break with our usual approach to the law governing employers and their independent contractors. It is a mistake to base our decision upon out-of-state law without being certain that our own law supports the step we take.

## V. CONCLUSION

I cannot join in the court's decision, for it imposes strict liability and severe damages exposure upon employers who may be acting honestly and carefully. Liability is automatic, attaching as it does upon proof of the repossessor's conduct and in spite of the employer's conduct. Damages are uncertain at this point, but potentially great.

To join in the court's decision, I would have to see much more convincing authority than currently exists. The Restatement does not support this decision. Texas law does not support the decision, and, in light of that law, it does not make sense to adopt the interpretation of other states.

Accordingly, I dissent.

HECHT, Justice, joined by GONZALEZ and CORNYN, Justices, dissenting.

I respectfully dissent. Section 9.503 of the Uniform Commercial Code authorizes a secured creditor to take possession of collateral without judicial process "if this can be done without breach of the peace". TEX. BUS. & COM.CODE § 9.503. The statute does not state that this duty to conduct nonjudicial repossessions peaceably is nondelegable. It could; it could add something like: "This duty cannot be delegated to any person acting on behalf of the creditor." And it might be good policy if it did; the Legislature is certainly empowered to determine that secured creditors should be liable for breaches of the peace caused by independent contractors hired to repossess collateral. But the Legislature has not done so; this Court has.

As justification for its decision, the Court relies upon section 424 of the Restatement (Second) of Torts (1965), which states that a statutory duty "to provide specified safeguards or precautions for the safety of others" is nondelegable. To bring section 9.503 within this rule, the Court must hold that the *specified* safeguard or precaution is not to breach the peace. This is at best an odd fit. Not to breach the peace may be a general guideline, but it is hardly a specified precaution. I find it very implausible that the Legislature ever had any notion, let alone intent, that by allowing secured creditors the remedy of peaceable nonjudicial repossession it was imposing upon them a nondelegable duty. This view is bolstered by the fact that the cases from other states upon which the Court relies were all decided within the past five years. The Uniform Commercial Code was adopted in each of those states at least 25

years ago; yet more than two decades passed before any court in the nation was asked to hold that section 9.503 imposed a nondelegable duty on secured creditors. This is a new judicial idea; it is not simply enforcement of legislative policy.

The consequences of the Court's decision are unclear. That is always the risk of judicial legislation. Courts cannot conduct hearings and investigate the need for new policies and their likely effects. Nevertheless, it appears that after today, secured creditors may use their own employees more to repossess collateral and attempt to exercise greater control over them. But when collateral has moved out of a creditor's vicinity, this alternative will not always be viable. Lenders may thus be expected to be more reluctant to make loans secured by distant or readily movable collateral. The Court itself recognizes that the burden of the liability it imposes may sometimes be heavy, and it proposes a solution: "the creditor may seek relief by turning to the courts." At 154. I would have thought that our courts had plenty to do without handling more repossession cases, and that the expense and delay of litigation was already a heavy enough burden without encouraging more. But I suspect the Court is right: creditors will be more inclined after today to choose the more expensive but less risky course of judicial foreclosure as the means of collecting their debts, rather than the much less expensive but much more dangerous course of nonjudicial foreclosure. Even still, there will be situations in which the creditor will quite innocently incur substantial liability for the actions of others over which it cannot exercise control. All these expenses must be added to the cost of credit, thereby charging all consumers more for loans just so debtors in default will have an additional cause of action against creditors who seek to be repaid. I doubt whether these costs—more cases for the courts, more litigation expense for creditors, and a dramatic increase in liability that is virtually unavoidable in at least some circumstances— are worth the change in policy the Court makes today.

I would hold that section 9.503 does not create a nondelegable duty for secured creditors. This does not leave a debtor without a remedy when a repossession of collateral has been accompanied by a breach of the peace. Such a debtor has a cause of action against the person causing the breach of the peace and any others who are vicariously liable for the offensive conduct. If those other persons are agents or independent contractors for whose conduct the creditor is not liable, a debtor may nevertheless have a cause of action against the creditor for negligent hiring. Debtors are thereby protected, and creditors' liability is commensurate with the level of their responsibility for any breaches of the peace.

The plaintiff in this case also argues that nonjudicial repossession of collateral is an inherently dangerous activity. Among the things which have been held not to be inherently dangerous activities are: construction work, *Agricultural Warehouse, Inc. v. Uvalle,* 759 S.W.2d 691, 695–96 (Tex. App.—Dallas 1988), *writ denied,* 779 S.W.2d 68 (Tex.1989) (per curiam); protection of property, *Gessell v. Traweek,* 628 S.W.2d 479, 482 (Tex.App.—Texarkana 1982, writ ref'd n.r.e.); use of a forklift or winch line to load oil drilling equipment onto a truck, *Gray v. Baker & Taylor Drilling Co.,* 602 S.W.2d 64, 67 (Tex.Civ. App.—Amarillo 1980, writ ref'd n.r.e.); use of a plumber's torch, *Goolsby v. Kenney,* 545 S.W.2d 591, 595 (Tex.Civ.App.—Tyler 1976, writ ref'd n.r.e.); aerial spraying per se, *Sun Pipe Line Co. v. Kirkpatrick,* 514 S.W.2d 789, 792–93 (Tex.Civ.App.—Beaumont 1974, writ ref'd n.r.e.); use of inflammable paint remover, *Olson v. B.W. Merchandise, Inc.,* 388 S.W.2d 737, 740 (Tex. Civ.App.—Austin 1965, no writ); use of a welding torch, *Brownsville Nav. Dist. v. Valley Ice & Fuel Co.,* 313 S.W.2d 104, 106 (Tex.Civ.App.—San Antonio 1958, no writ); electrical work, *Texas Elec. Serv. Co. v. Holt,* 249 S.W.2d 662, 667 (Tex.Civ.App.— Fort Worth 1952, writ ref'd n.r.e.); blasting per se, *Seismic Explorations, Inc. v. Dobray,* 169 S.W.2d 739, 742 (Tex.Civ.App.— Galveston 1943, writ ref'd w.o.m.); and operation of an oil refinery, *Hall v. Amoco*

*Oil Co.*, 617 F.Supp. 111, 112 (S.D.Tex. 1984). If these activities are not inherently dangerous, neither is nonjudicial repossession.

I join generally in the reasoning in Parts III and IV of Justice COOK's dissenting opinion. I would reverse the judgment of the court of appeals and affirm the trial court's summary judgment for the defendant.